Cheshire,
No. 5166.

Louise A. Aldrich

*v.*

Charles Beauregard & Sons.

Argued March 3, 1964.
Decided April 24, 1964.

*Faulkner, Plaut, Hanna & Zimmerman* (*Mr. John J. Zimmerman* orally), for the plaintiff.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *Dort S. Bigg, Jr.* (*Mr. Bigg* orally), for the defendant.

BLANDIN, J. The present action is one of fifteen cases pending in the Cheshire County Superior Court against the defendant, arising out of a typhoid fever epidemic in the Keene area in the fall of 1959. A motion to dismiss was filed in each case. Counsel have agreed that this action may be decided upon the pleadings and incorporated documents and that our decision shall be decisive of all the cases. The issue is whether, as a matter of law, the motion to dismiss should be granted. In determining this, we treat all facts properly pleaded by the plaintiff and the reasonable inferences therefrom as true and construe them most favorably to her. *Cote* v. *Litawa*, 96 N. H. 174, 175; *Bell* v. *Pike*, 53 N. H. 473, 475. If the plaintiff is entitled to judgment upon any state of facts findable under the pleadings, the present motion to dismiss must be denied. *Nashua Iron &c. Company* v. *Railroad*, 62 N. H. 159, 161.

During the period in question, the defendant was engaged in the lumber business and had a contract with the city of Keene to cut and remove certain timber belonging to it and located in the general vicinity of its water supply. While this operation was in progress, the plaintiff contracted typhoid fever. She originally brought suit against the city, alleging a breach of warranty with respect to the fitness of the water for human consumption and claiming damages in the amount of $10,000. This action was begun by a writ dated May 31, 1960. The suit was founded on a breach of warranty and the declaration

alleged in substance that the city was engaged in the business of selling and distributing water to the general public, to whom, including the plaintiff, it represented that the water was free from disease and fit to drink, knowing that the plaintiff would drink it. That relying upon the defendant's warranties and representations that the water was pure, the plaintiff drank it; that the water was filled with typhoid germs and not fit to drink, which fact the defendant knew or should have known; that the plaintiff did not know of any impurities in the water; that she drank it during the months of October and November, 1959, contracted typhoid fever, "was made violently ill and suffered great pain and anguish and incurred substantial medical and hospital expenses, was unable to work for a considerable period of time and will, in the future, suffer great pain and anguish, all to the damage of the plaintiff as she says in the sum of ten thousand dollars."

On June 28, 1960, an agreement for judgment was filed as follows:

"Judgment for the plaintiff in the amount of $4,516.83. No costs. It is agreed that this is a judgment against these defendants only. The plaintiff expressly reserves her rights to proceed against any other person, organization or corporation. This judgment is not to be considered as a release of any other person, organization or corporation that is or may be involved in this matter, and is not considered as full compensation to the plaintiff for the damages she has suffered."

On June 29, the next day, a covenant not to sue the city and the North Swanzey water and fire precinct was executed by the plaintiff. This covenant provided as follows:

"For the consideration of four thousand five hundred sixteen and 83/100 dollars ($4,516.83), the receipt and sufficiency whereof is hereby acknowledged, the undersigned does hereby covenant and undertake with the City of Keene, New Hampshire . . . and the North Swanzey Water & Fire Precinct . . . their successors and assigns, to forever refrain and desist from instituting or asserting against them any claim, demand, action or suit of whatsoever kind or nature, either directly or indirectly, for injuries or damage, to person or property, resulting or to result from typhoid fever contracted by Louise A. Aldrich in or about November, 1959, at or near Keene and Swanzey, New Hampshire.

"It is understood that the said City of Keene and the North

Swanzey Water & Fire Precinct expressly deny any negligence on their part causing or contributing to said typhoid fever and any liability therefor, and that this agreement is entered into for the purpose of avoiding litigation and shall not be construed as an admission of liability on their part, and is a compromise settlement only, and that the undersigned hereby expressly reserves the right to sue any other person or persons or corporations against whom she may have or assert any claim on account of damages arising out of the above described typhoid fever.

"It is further expressly understood and agreed that as against the undersigned, her heirs, executors, administrators and assigns, this instrument may be pleaded as a defense in bar or abatement of any action of any kind whatsoever, brought, instituted or taken by or on behalf of the undersigned on account of said supposed claim or claims against said City of Keene and the North Swanzey Water & Fire Precinct."

On the same day, the plaintiff executed an agreement with the city and the water precinct, which provided thus:

"In further consideration of the amount of $4,516.83 set forth in a separate covenant not to sue which the undersigned have executed and delivered to the City of Keene and the North Swanzey Water & Fire Precinct, the undersigned do, for ourselves, our heirs, executors, administrators, successors and assigns, hereby sell, assign and transfer unto the City of Keene and the North Swanzey Water & Fire Precinct, their successors and assigns, and to their own proper use and benefit, any and all sums of money due or owing to the undersigned, or to either of us, and of all claims, demands and causes of action of any kind whatsoever, which either or both have had, now have, or may in the future have against any person, firm, or corporation whatsoever by reason of Louise A. Aldrich having contracted typhoid fever on or about November, 1959, and the undersigned hereby irrevocably make, constitute and appoint the said City of Keene and North Swanzey Water & Fire Precinct and their successors and assigns, our true and lawful attorney and attorneys, with full power of substitution and revocation, for us and in our names, places or steads or otherwise, but for the sole use of the City of Keene and North Swanzey Fire Precinct, as their interests may appear, and their successors and assigns, to ask, demand, and sue for, in their name and right, or in the name and right of either of them, to collect, receive, compound

and give acquittance for our claim or claims, or the claim or claims of either of us, or any part thereof, against any person whomsoever."

Subsequently, by writ dated December 8, 1960, suit was brought by the city in the name of Mrs. Aldrich against the present defendant, with an ad damnum of $50,000. The declaration alleges in substance that "in a plea of the case" the defendant executed a contract with the city of Keene pursuant to which he entered upon the land owned by the city for the purpose of cutting and removing timber therefrom; that the timber operations commenced prior to October 1959, and continued through that month; that the defendant "carelessly, recklessly and negligently" permitted its agents and employees to construct and live in a camp located on the premises; that the defendant knew or should have known that the camp was within the water shed area which was the source of the water supply for the city and others, including the plaintiff; that the defendant knew or should have known that the camp was not equipped with any toilet or other sanitary facilities for the proper disposal of human fecal or other waste matter; that the defendant also knew or should have known that the failure to properly dispose of fecal and other waste matter constituted a danger to the life and health of the consuming public, of which the plaintiff was one; that one of the employees of the defendant was, in October, 1959, infected with typhoid fever and was a so-called typhoid carrier; that he and others, during October, 1959, while living in the camp and water shed area, defecated in the open area surrounding the camp so that the fecal matter containing typhoid germs was washed into the water system and were ingested by the plaintiff and others; that as a result of such "ingestion" which was caused by "the carelessness, recklessness and negligence of the defendant," the plaintiff contracted typhoid fever, "was hospitalized for many days and may in the future be hospitalized, was confined at home for many days under the care of a nurse, suffered great pain and will in the future suffer great pain, all to the damage of the plaintiff" in the sum of $50,000.

Special appearances were duly entered, and on July 7, 1961, a motion to dismiss was filed, alleging the following reasons for the dismissal:

"1. The plaintiff brought suit against the City of Keene alleging in substance that the water which she purchased from the City . . . was not wholesome nor fit for human consumption.

"2. On June 28, 1960, judgment was entered by agreement between Louise A. Aldrich and the City of Keene in the sum of $4,516.83. The agreement reserves a right to the plaintiff to proceed against any other person.

"3. On June 29, 1960, Louise A. Aldrich signed a covenant in the sum of $4,516.83. This covenant is in the usual form and the City of Keene denies any negligence.

"4. On June 29, 1960, Louise Aldrich signed a subrogation agreement purporting to assign to the City of Keene and the North Swanzey Water & Fire Precinct all claims against any other person by reason of Louise A. Aldrich contracting typhoid fever as previously alleged in her declaration and writ against the City of Keene.

"5. On August 23, 1960, attorney Richard R. Fernald wrote a letter to the defendant, Charles Beauregard & Sons, Inc., informing Beauregard that the City of Keene was subrogated to the rights of the said Louise A. Aldrich, and unless the matter was settled that legal action would be instigated.

"6. By writ dated December 8, 1960, suit was brought in the name of Louise A. Aldrich versus the defendant . . . in the sum of $50,000 . . . wherein it is alleged that the plaintiff's illness was caused by reason of the negligence of the defendant.

"It is respectfully suggested to the Court that upon the above facts that this action should be dismissed:

"1. The covenant between Louise A. Aldrich and the City of Keene was a settlement by the City . . . to dispose of pending litigation and to free the City from further actions at law. Assignment of the personal injury claim then to the City of Keene to sue in the name of Aldrich is inconsistent and incompatible with the covenant.

"2. The City of Keene is the real plaintiff in interest in this case and in the event that the named plaintiff, Louise A. Aldrich, obtained a judgment against Beauregard then the amount of the settlement, to wit, $4,516.83, would necessarily be deducted from the verdict.

"For the foregoing reasons it is respectfully moved that this action be dismissed."

The defendant's primary contention in support of his motion to dismiss is that the original plaintiff, Mrs. Aldrich, "has received full satisfaction for her injury," as shown by the agreement for judgment entered on the court docket, the covenant not to sue, and the subrogation and assignment all considered

together. We agree that these documents, being parts of a closely related transaction, should be construed together. *Bogosian* v. *Fine*, 99 N. H. 340, 344. Their interpretation, which is ultimately for this court, depends upon the intention of the parties. *Pettee* v. *Chapter*, 86 N. H. 419; *Hogan* v. *Lebel*, 95 N. H. 95, 97.

The defendant further asserts, as a basis for his conclusion that Mrs. Aldrich must be deemed to have received full satisfaction, that since the instruments were all drawn by the city's attorney, they should be construed "strictly" against it. He cites no New Hampshire authority for this proposition, nor do we know of any. In fact, it appears that the rationale of our decisions categorically rejects this arbitrary rule in the interpretation of written instruments. *McGinley* v. *Insurance Co.*, 88 N. H. 108, 109; *Malloy* v. *Head*, 90 N. H. 58, 63. See *Pettee* v. *Chapter*, *supra*, 426. As a general proposition, no presumptions are to be indulged in either for or against a party who draws an agreement. *McGinley* v. *Insurance Co.*, *supra*, 109. In this connection, it should be observed that insurance agreements and other written instruments are construed according to the same general principles. *Cartier* v. *Casualty Company*, 84 N. H. 526. It is only when all other means of ascertaining the intent of the parties have failed, in the case of a deed, for example, that doubts are resolved against the grantor. *Glines* v. *Auger*, 93 N. H. 340, 342.

In the present situation, we believe that the intent of the parties is reasonably plain. Unquestionably the plaintiff can have but one full recovery for any damage she has suffered. *Burke* v. *Burnham*, 97 N. H. 203, 207; *Holland* v. *Company*, 83 N. H. 482, 485. However, neither the release given by Mrs. Aldrich nor any other instrument in and of itself, or construed with another, constitutes a bar to the present suit, unless it shows an intent to acknowledge complete satisfaction of her claim. *Colby* v. *Walker*, 86 N. H. 568, 571-572; *Stacy* v. *Company*, 83 N. H. 281, 283. In the agreement for judgment in the sum of $4,516.83, dated June 28, 1960, it was expressly agreed "that this is a judgment against these defendants only. The plaintiff expressly reserves her rights to proceed against any other person, organization or corporation. This judgment is not to be considered as a release of any other person, organization or corporation that is or may be involved in this matter, and is not considered as full compensation to the plaintiff for the dam-

ages she has suffered." The covenant not to sue, executed for the same consideration on June 29, 1960, releases only the city and the North Swanzey water and fire precinct. It states that it is a compromise settlement only and that Mrs. Aldrich reserves her rights "to sue any other person or persons or corporations against whom she may have or assert any claim on account of damages arising out of the above described typhoid fever."

In the so-called subrogation agreement and assignment to the city and water precinct, signed on the same day as the covenant not to sue and reciting the same consideration, the undersigned (plaintiff) "for ourselves, our heirs, executors, administrators, successors and assigns" sold and assigned all their claims arising out of Mrs. Aldrich having contracted typhoid fever, to the city and the precinct.

Thereafter this instrument appointed the city and water precinct as attorneys for Mrs. Aldrich, to sue for and collect for their own use her claims and those of her successors and assigns "against any person whomsoever."

The defendant argues that "In essence, Plaintiff has reserved her right to bring suit against others in the Agreement for Judgment and the Covenant Not To Sue but she has divested herself of this right by transferring it to the recipient of the Covenant Not To Sue." He claims that the total effect of these instruments, executed practically contemporaneously and for a single consideration, shows that the plaintiff intended to acknowledge full compensation for all her damages.

We are unable to accept this argument. In both the agreement for judgment and the covenant not to sue, the plaintiff made it abundantly clear that she was reserving her rights as to any and all others against whom she might have a claim for her illness and that the settlement was a compromise and not to be considered as full compensation to the plaintiff for the damages she suffered. In the covenant not to sue, the plaintiff agreed that the instrument might be pleaded as a defense *only in actions against the city and water precinct* in any suit by *her* or "her heirs . . . and assigns" against the city or precinct. Obviously "assigns" here refers to others than the city or precinct. The protection which they purchased by the compromise settlement as implemented in the covenant not to sue was against actions by Mrs. Aldrich, her heirs, or any third party to whom she might assign her claim for the balance of her damages.

The assignment and so-called subrogation agreement, executed on June 29, 1960, contemplated a transfer to the city and precinct of any balance which might be due her to afford her full satisfaction for her damages. The rationale in *Colby* v. *Walker*, 86 N. H. 568; *Masterson* v. *Railway*, 83 N. H. 190, and other cases cited by the defendant, all lay down the rule that the vital issue in such situations as the present is whether the plaintiff has received something as full compensation for her damages. Where the release or other instruments deny directly or by reasonable implication that such has been collected, suit against others also liable for the damage may be maintained. *Holland* v. *Company*, 83 N. H. 482, 485-486.

We believe that their positive and plainly expressed intent that the settlement with the city and water precinct was not in full satisfaction of her damages and that Mrs. Aldrich reserved her rights against others, must prevail over other ambiguous language from which a contrary meaning might be drawn. *Colebrook Water Co.* v. *Parsons*, 88 N. H. 217.

It follows that the defendant's motion to dismiss cannot be granted on the grounds that the instruments must be construed to hold that the plaintiff has accepted payment in full compensation for her damages.

The defendant takes the position that the motion to dismiss should be granted "for the additional reason that the pending action contemplates a nullity." This is so, he says, first, because the city as subrogee is entitled to recover only the $4,516.83 it paid to the plaintiff. It cannot make a profit on the transaction, since subrogation is an equitable doctrine (*Security Fence Co.* v. *Association*, 101 N. H. 190), and the defendant is entitled to a setoff of this amount against any judgment recovered against him. He further argues that the city, in a vain attempt to avoid his right to a setoff, seeks to be treated as a subrogee, and in order to "make a profit" and to escape any limitation on the amount of its recovery, it also seeks to be treated as an assignee. This position, the defendant claims, is inconsistent and prejudicial to him and it should be rejected by the court.

We are unable to agree. The city concedes that there can be but one recovery for the total damages suffered by the plaintiff under any theory which it may choose to adopt. *Holland* v. *Company*, 83 N. H. 482, 485. It also agrees that if the maximum verdict which could be returned against the defendant in the present negligence action could not exceed $4,516.83, the

motion to dismiss would have to be granted. The city urges, however, that since the plaintiff has not received full compensation for her injuries, the verdict in the negligence action ought to exceed $4,516.83. It says it should be allowed to maintain its suit as assignee and collect any balance due the plaintiff. It does not seriously dispute the defendant's claim that $4,516.83 will have to be deducted from any verdict which it may recover as assignee in excess of that amount and credited to the defendant. This is true because in her action of warranty the plaintiff sought to recover damages for pain, suffering and consequential damages. These are the same damages which would be recoverable in the pending tort action. While the actions of warranty and tort are now deemed separate and distinct (*Howson* v. *Company*, 87 N. H. 200, 206-207; *Wadleigh* v. *Howson*, 88 N. H. 365, 367), the damages recoverable in each action would be substantially the same. *Russell* v. *Stores*, 96 N. H. 471, 478; 1 Frumer & Friedman, Products Liability, *s.* 16.01[2]. See RSA 346:69 VI. The deduction would therefore be necessary. *Burke* v. *Burnham*, 97 N. H. 203, 207.

In addition to the fact that no action for negligence has been brought against the city, it has throughout these proceedings alleged that it was not negligent and has denied all liability to the plaintiff for damages on any grounds whatsoever. On the defendant's motion to dismiss, the allegations in the plaintiff's pleadings, including not only those in the writ but the other documents, must be taken to be true and construed most favorable to her and to the city as her assignee. *Cote* v. *Litawa*, 96 N. H. 174, 175.

In these circumstances, we are aware of no authority, and none has been called to our attention, which would bar the city —which for obvious reasons does not now elect to proceed as subrogee—from pressing its suit as assignee against the defendant. The latter's assumption that it would be against public policy to permit this because the city would thereby make a profit from its own wrong (Restatement, Restitution, *ss.* 3, 17) assumes that the city was negligent. On the motion to dismiss, as previously stated, this argument ordinarily would be unavailing. *Cote* v. *Litawa*, *supra*, 175.

However, the defendant insists that the pleadings raise this question of the city's due care and, as a matter of law, conclusively prove that its negligence was causal of the plaintiff's damage. This, he says, makes the city a joint tort feasor in

any event with the defendant, and there can be no contribution between such. *Beaule* v. *Weeks*, 95 N. H. 453, 458. An examination of the defendant's motion to dismiss discloses no basis for his claim that it raises this issue or proves the city's negligence.

In all the circumstances, we will not now undertake to advise the parties in advance of trial of their rights under facts which may never be established or under all possible facts which might be proved. *White Mountain &c. Co.* v. *Murphy*, 78 N. H. 398, 403; see *Fuller Enterprises* v. *Manchester Sav. Bank*, 102 N. H. 117, 123.

In conclusion, we hold that the plaintiff has not acknowledged receipt of full compensation for her damages and that the present action against the defendant may be maintained by the city as her assignee. The sum of $4,516.83 should be credited to the defendant and deducted from any amount recovered by the city in this action in excess of that sum. *Burke* v. *Burnham*, 97 N. H. 203, 211-212. The defendant's motion to dismiss must be denied, and the order is

*Remanded.*

All concurred.