

*Hamblett, Kerrigan & Hamblett* ( *Mr. Joseph M. Kerrigan* orally ), for the plaintiff.

*Nighswander, Lord & Martin* and *David J. KillKelley* ( *Mr. KillKelley* orally ), for the defendant.

GRIMES, J. This matter began with an action to recover under a contract for the purchase of Mobil Oil Corporation products followed by a counterclaim for damages for an alleged breach. There was a trial by the Court resulting in a verdict for the plaintiff in the amount of $2,786.54. The exceptions of the defendant were transferred by *Loughlin,* J.

By contract on a printed form dated September 1, 1964, the defendant agreed to purchase and the plaintiff to sell and deliver stated minimum and maximum amounts of specified products of the plaintiff which also agreed to loan defendant certain equipment. The original contract was to expire August 31, 1965, with successive one-year renewal options. However, on the same date ( September 1, 1964 ), the parties signed a typed modification of the contract referred to as an improvement letter which stated that the plaintiff had made certain improvements on defendant's property at a cost of $4,400 and that the contract would continue in effect until August 31, 1969 and for successive similar renewal periods thereafter unless terminated by notice given 90 days prior to the end of any current renewal period. It provided also that

"seller may terminate at any time prior to normal expiration date . . . by written notice on default of buyer, or may suspend deliveries during default." It further provided that "if the contract is terminated by the seller as a result of default on buyer's part prior to the normal expiration date, or if the contract is wrong-fully terminated by buyer prior to the normal expiration date, the buyer shall pay the seller in cash a sum equal to $73.33 multiplied by the number of months between the date of earlier termination and the normal expiration date." It then provided that if the contract were performed up to its normal expiration date ( August 31, 1969 ), the buyer would be under no obligation to reimburse the seller for the improvements. The printed contract provided that all notices "shall be in writing and shall be delivered personally . . . or sent by registered or certified mail . . . ."

The printed contract also stated that defendant had "a place of business at Rt. 11, Gilford, N. H. hereafter called premises" and the plaintiff agreed to make "Deliveries . . . at the premises."

On September 1, 1964 at the time the contract was signed and for some time prior thereto, the defendant owned about two acres of land on the shore of the lake on part of which certain buildings, docks and other improvements were located, including the improvements furnished by the plaintiff under the contract. By deed dated September 17, 1965, defendant without notice to or knowledge of the plaintiff sold what was described on the defend-ant's corporate records as about one and a quarter acres includ-ing the improvements thereon to the State of New Hampshire for $120,000.

Defendant was permitted by the State to use the gasoline and oil storage and pumping facilities until July 1, 1966 when the State, which had a statewide contract with the plaintiff, started to have gasoline delivered to its premises for its use.

The defendant's president, Mr. Goodhue, formed a new corpora-tion which started selling gasoline of another supplier on a plot of land owned by Mr. Goodhue about 1,000 feet from the original location after plaintiff declined to service defendant under the existing contract at the new location.

Defendant contends that this declination by plaintiff constituted a breach of the contract, claiming that the agreement called for delivery to defendant's "place of business" and that it was not

limited to a particular location but applied to any location where defendant was carrying on its business and therefore obligated plaintiff to deliver to the new location. We cannot accept this interpretation of the agreement and we agree with the Trial Court. The printed contract and the so-called improvement letter should be read together as a single contract ( *Rivier College* v. *St. Paul Fire Ins. Co.*, 104 N. H. 398 ), the interpretation of which depends on the intention of the parties and not on any arbitrary rule to construe it strictly against the party who drew it as contended by the defendant. *Aldrich* v. *Beauregard & Sons*, 105 N. H. 330, 336, 200 A. 2d 14. We need not decide if such a rule is applicable to contracts when all other means of ascertaining the intent of the parties have failed, ( see *Aldrich* v. *Beauregard & Sons, supra* ) because that is not the situation here.

Plaintiff agreed to make deliveries "at the premises." The premises had been identified as the defendant's "place of business at Rt. 11, Gilford, N. H." At the time the contract was made the defendant's "place of business" was the property which was subsequently sold to the State. It was on those premises that plaintiff had made the "improvements" and it was from the profits to the plaintiff made from deliveries to those premises that it had a right to expect payment for those improvements. The Trial Court correctly ruled that the plaintiff did not breach its agreement by failing to make deliveries under the contract to defendant's new location.

This same interpretation of the agreement sustains the Trial Court's finding that the defendant had breached the contract. By the sale of "the premises" without any reservation of the right to use the gasoline and oil dispensing and storage facilities, the defendant made performance impossible. Although the State has by written agreement allowed the defendant to continue to use certain boat lift facilities and did allow it to continue to use the gasoline and oil facilities until it had need for such facilities beginning July 1, 1966, it was findable that after that date defendant was not permitted to dispense gasoline and oil on "the premises" to which the contract related. The defendant disabled itself from being able to perform and this constituted a wrongful termination under the contract so that no notice by the plaintiff was required. *Lovering* v. *Lovering*, 13 N. H. 513, 521; 17A C.J.S., Contracts, *s.* 470. The damages awarded by the Court were only the balance

due on the cost of the improvements after giving credit to the defendant up to July 1, 1966.

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.