Coös,
March 4, 1930.

DEAN C. STEVENS *v.* MUTUAL PROTECTION FIRE INSURANCE CO.

SAME *v.* MERRIMACK MUTUAL FIRE INSURANCE CO.

*Edmund Sullivan* (by brief and orally), for the plaintiff.

*Shurtleff & Hinkley* and *Shields & Conant* (of Vermont) (*Mr. Conant* orally), for the defendants.

Snow, J. The policies insured the plaintiff's dwelling, and attached stable. The actions are for fire damages to the latter.

It appears to be conceded that the fire originated from a Newtown kerosene oil brooder which, subsequent to the date of the policy and without the knowledge or permission of the companies, had been installed by the plaintiff in the second story or open chamber of the stable, where it had been in operation for about seven weeks. The chamber had a floor space of 24 feet by 28 feet and a post of 5 feet, and was open to the roof. Some years before it had been used as a hayloft. The brooder was installed upon the floor in one corner of the chamber from which the hay and chaff had been swept. Some hay and chaff remained in the opposite corner of the room. The brooder consisted of a galvanized iron hover, shaped like an umbrella, under the center of which was a single wick oil burner with a chimney—the wick being supplied with oil from an outside one gallon glass tank through a pipe which passed underneath a grate of heavy gauged galvanized iron upon which the supports of the burner rested. The grate was about one and a half inches and the flame about one foot above the floor. The wick was operated as in an oil stove by a thumb nut which was out of reach of the brood. This apparatus was enclosed by a wire fence which left a space of eight to ten inches around it within which the floor was covered about one inch deep with planer shavings as a litter for the chicks to run on. The brooder was designed to furnish artificial heat for the brood during the fledging period, was of modern type and in common use. It was run day and night and tended by the plaintiff three times a day, morning, noon and evening, the tank being filled and the wick cleaned and relighted each evening.

In the body of each policy appears the provision,—"this policy shall be void and inoperative during existence or continuance of the acts or condition of things stipulated against, as follows:...." This clause is followed by a specification of the several "acts or condition" referred to, two of which, so far as material, were (a) "if, without such [the company's] assent, the situation or circumstances affecting the risk shall ... be so altered as to cause an increase of such risk," (b) "if camphene, benzine, naphtha, or other chemical oils or burning

fluids shall be kept or used . . . on the premises insured, except what is known as refined petroleum, kerosene, or coal-oil, may be used for lighting." The rider, upon each policy, specifying the property covered contains a recital of several permitted rights among which is the following:—"Kerosene Oil Stoves. Permission is given for the use of *Kerosene Oil Stoves*."

In support of their motion for a directed verdict the defendants contend (1) that the brooder, especially in the place installed, and manner operated, did not come within the permissive clause, (2) that under the admitted or conclusively established facts its installation and use, as a matter of law, constituted an alteration increasing the risk within the terms of the voiding clause. These positions call for an understanding of the meaning of the foregoing provisions.

The clause in the body of the policy avoiding it if burning fluids were used, excepting only the use of kerosene oil for lighting, made necessary a further provision if the use of such oil was to be allowed for any other purpose. Such appears to have been the occasion for the clause (in the rider) expressly permitting the use of kerosene oil stoves. As the distinguishing feature of a stove is to produce heat the logical inference is that this clause was designed to add the production of heat to the permissible uses of such oil, which without it was limited to lighting. The word "stove" covers a variety of heat producing apparatus employed for various uses. Neither the name of a particular device nor its adaptability for a particular use necessarily determines whether or not it is a stove, nor is a comprehensive definition necessary here. It is sufficient for this case that it could be found that, in its function and design, as well as in the essential parts of its construction and in its operation, the brooder in question did not materially differ from the ordinary oil stove. It was therefore a permissible appliance under the terms of the policies.

As respects the place of its use, the language of this permissive clause is general. It is equally applicable to any part of the insured premises. The suggestion in argument that the court should take judicial notice that it is not customary in this state to use kerosene oil stoves in a barn cannot be followed. The court cannot say from its common knowledge that there is such a customary limitation in their use. On the contrary, it is our understanding that such stoves are rather commonly used wherever on the premises convenience and economy call for the maintenance of only a moderate degree of temperature. There is no evidence in support of the asserted limitation. The testimony of the defendants' agent of his understanding

that the permissive clause was subject to an unexpressed limitation of use to dwellings has no evidentiary value in construing its meaning. "The particular and non-concurring understanding of one of the parties is . . . usually immaterial." *McConnell* v. *Lamontagne*, 82 N. H. 423, 425. "The interpretation of an insurance contract, like the interpretation of other contracts, depends upon the intention of the parties ascertained from legally competent evidence. For sound reasons, universally recognized in the administration of justice, the evidence which is admissible upon the question of the meaning or intention of the parties does not include ordinarily their parol testimony. The point to be determined is, not what they in fact intended or expected to do, but what they in fact expressed as their purpose in the writing presented for interpretation . . . It is not the province of the court to make contracts for parties, or to allow them to change, modify, or abrogate their agreements by parol proof that they did not intend to bind themselves by the terms they chose to employ as expressive of their intention." *Marsh* v. *Insurance Co.*, 71 N. H. 253, 254; *Metropolitan Life Insurance Co.* v. *Olsen*, 81 N. H. 143, 146. It would have been a simple matter to have limited the permission granted to the insured's dwelling if that had been the intent. The terms of the policies permitting the use of oil stoves upon the insured premises, being plain and unequivocal, it is not perceived on what principle evidence of the alleged custom, if one existed, could be held admissible to qualify the meaning of such terms. The mere fact that the brooder was in the chamber of the barn does not avoid the policy as a matter of law.

As respects the manner of the use and operation of kerosene oil stoves, the permissive clause carries no express or implied restriction. Their use on the premises is expressly sanctioned. In the absence of bad faith or an intention to destroy the property by fire the insured may ordinarily make such manner of use of any permitted apparatus as he sees fit without avoiding his right to recover for resulting fire damages. Injury to the insured's property occasioned by his mere misjudgment or carelessness is one of the risks insured against. *Huckins* v. *Insurance Co.*, 31 N. H. 238, 247; *Gove* v. *Insurance Co.*, 48 N. H. 41, 43; *Boston Ice Co.* v. *Railroad*, 77 N. H. 6, 19; Vance, Ins. 462, 463; Richards, Ins. s. 257.

The provision that the policy should be void if, without the insurer's assent, "the situation or circumstances affecting the risk shall . . . be so altered as to cause an increase of such risk" must be given a reasonable construction. *Janvrin* v. *Insurance Co.*, 70 N. H.

35, 36. In construing the same language this court there said, "From the nature of things, there must necessarily be more or less changes in the situation and circumstances affecting fire insurance risks, which, while they may be said to theoretically increase the risk, yet do not materially increase it. It must therefore have been intended that this contract should be subject to and unaffected by these slight changes unless we are to understand that this clause was expressly designed to avoid the contract and make it fail to accomplish the object sought in all such contracts,—the protection of the property described in the policy. While, therefore, a fair construction of this clause requires that a material increase in the risk known to the assured should avoid the policy, to protect the insurer from being liable under circumstances entirely different from and much more hazardous than those existing at the time of the execution of the policy, yet it does not require that every trivial change more or less incident to any piece of property and its surroundings, which does not substantially increase the risk, should avoid the policy and deprive the assured of its protection." See *Moore* v. *Insurance Co.*, 64 N. H. 140, 142-143, 145.

In providing for an avoidance of the policy because of an alteration "in the situation or circumstances affecting the risk" which would "cause an increase of risk" the parties intended such alteration as would materially and substantially enhance the hazard as viewed by a person of ordinary intelligence, care and diligence. *Adair* v. *Insurance Co.*, 107 Ga. 297, 304; *Crane* v. *Insurance Co.*, 3 Fed. Rep. 558, 661; *German Fire Insurance Co.* v. *Stewart*, 13 Ind. App. 627, 631; *Kircher* v. *Insurance Co.* 74 Wis. 470, 473; May, Ins. ss. 218, 219; 4 Joyce, Ins. s. 2207.

As already appears, oil stoves were expressly permitted, and hence the mere installation of one or more after the policies were issued did not render the policies void although the risk was thereby increased. It follows that the only issue here based on this clause relates to the manner of their use. Whether or not the installation and operation of the brooder in the manner shown constituted such an increase in the risk presented a question of fact for the jury if there was competent evidence upon that issue on which reasonable men might disagree. *Janvrin* v. *Insurance Co.*, *supra; Shepherd* v. *Insurance Co.*, 38 N. H. 232, 239, 240; *Davis* v. *Insurance Co.*, 67 N. H. 335, 340.

The defendants' assertion, in argument, of the conclusive proof of an increase of hazard is based upon the claim that the testimonial opinions of their local agents, viz. that the use of the brooder *as*

*installed* materially increased the risk, are not fairly met by the testimony of the plaintiff and his witness, viz. that the brooder was in their opinion no more dangerous than would be an oil stove likewise installed. The latter opinions do not, they say, meet the necessary import of the former that the stable chamber was not a proper place for either. This argument is predicated upon the erroneous assumption that opinion evidence as to the relative hazard is here controling. *Cornish* v. *Insurance Co.*, 74 N. Y. 295, 297, 298. The views of these several witnesses were received in evidence under our liberal practice of admitting the opinions of laymen when it is found that they possess superior knowledge which will aid the jury. *State* v. *Killeen*, 79 N. H. 201, 202; *Paquette* v. *Company*, 79 N. H. 288, 290; *Olgiati* v. *Company*, 80 N. H. 399. The issue here, however, did not involve matters of skill, necessarily requiring exposition by professional experts. Oil stoves, if not brooders, have been so long in general use that the jury may be presumed to be familiar with their use and the ordinary hazards arising therefrom. The construction, operation, placement and surroundings of the brooder in question were described in the evidence in great detail, and the identity of the essential features of brooders and oil stoves pointed out and explained. There was abundant evidence, independent of the testimonial opinions, to justify the submission to the jury of the issue of whether or not the brooder as installed caused a material and substantial increase in the fire hazard. There was no error in the denial of the defendants' motion for a directed verdict.

In support of the exception to the denial of their motion that the jury be dismissed, the defendants contend that, each party having made a motion for a directed verdict in his favor, the right of either to go to the jury was thereby waived, and that thereupon it became the duty of the court to decide all questions. Support for this contention is found in the decisions of the courts of a majority of the American jurisdictions in which the question has arisen, including the federal courts, while the contrary view is sustained by a respectable minority of the state courts. See note 18 A. L. R., *p.* 1433-1460 where the leading authorities *pro* and *con* are marshaled and digested.

The reasoning of the cases supporting the majority view, in brief, is that, by making mutual motions for directed verdicts, the parties "assume the facts to be undisputed" (*Empire State Cattle Co.* v. *Railway*, 210 U. S. 1, 8; *Williams* v. *Vreeland*, 250 U. S. 295, 298), or "tacitly" admit "that the evidence was free from conflict" (*Lind-*

*quist* v. *Company*, 22 S. D. 298, 299), "affirmed that there was no disputed question of fact which could operate to deflect or control the question of law" (*Buetell* v. *Magone*, 157 U. S. 154, 157); that the making of such motions is "sufficient evidence of an intention to waive" the right to a jury trial (*Share* v. *Coats*, 29 S. D. 603, 611), "Constitute a waiver of the right to submit questions of fact to a jury" (*Redman* v. *Lasell*, 44 S. D. 327, 331; *Lindquist* v. *Company*, *supra*), in effect amounts to an agreement "that the question at issue should be decided by the court" (*St. Louis &c. Ry.* v. *Mulkey*, 100 Ark. 71, 74; *Mehrhof Bros. Brick Mfg. Co.* v. *Wood*, 14 N. Y. Supp. 142), is "necessarily a request that the court find the facts" (*Buetell* v. *Magone*, *supra*) "in effect is a submission of questions, both of law and fact, to the court (*Share* v. *Coats*, *supra*, 610) and "clothed the court with the functions of the jury." (*Thompson* v. *Simpson*, 128 N. Y. 270, 283; *Second National Bank* v. *Weston*, 161 N. Y. 520.)

On the other hand the courts sustaining the minority view, hold, in short, that such mutual motions do "not amount to a consent that the case shall be taken from the jury" (*Fitzsimons* v. *Company*, 86 Vt. 229, 233; *Mason* v. *Sault*, 93 Vt. 412, 414; *Hayes* v. *Kluge*, 86 N. J. L. 657, 661) or "to a submission of controverted questions of fact to the court" (*Wolf* v. *Company*, 233 Ill. 501, 506; *Taylor* v. *Wooden*, 30 Okla. 6, 8; *Farmer's National Bank* v. *McCall*, 25 Okla. 600, 609; *Virginia-Tennessee &c. Co.* v. *Hodges*, 126 Tenn. 370); that the motion of each party is "distinct from and adverse to that of his adversary," and that as to each "the only question submitted to the trial judge is the question of law" (*Ib.* 378); that "such motions do not indicate any agreement or mutual concession by the parties, but rather an irreconcilable difference" (*Manska* v. *Company*, 191 Iowa 1284, 1286); that they carry no implication of a waiver (*Id.*; *Stauff* v. *Bingenheimer*, 94 Minn. 309, 312) but on the contrary import an implied request that the disputed facts be submitted to the jury. *German Savings Bank* v. *Company*, 111 Ia. 432, 436.

These opposing views are directed to the effect of unqualified concurring motions for directed verdicts. Courts holding to the majority rule concede that it does not apply when a contrary intention is manifest, or where the denial of the motion is followed by an immediate request for submission of the facts to the jury (*Empire State Cattle Co.* v. *Company*, *supra*; *Second National Bank* v. *Weston*, *supra*); while courts supporting the minority rule admit that waiver results where all issues are "understandingly submitted to the court

at the close of all the evidence." *Woodsville &c. Co.* v. *Rogers,* 82 Vt. 468, 469; *Seaver* v. *Lang,* 92 Vt. 501, 510. The defendants' motion for dismissal of the jury here rests solely upon successive motions for direction of verdicts severally denied, and therefore presents the narrow question which divides the authorities.

It is manifest from the reasoning of the cases that the disagreement in the authorities arises from a difference of understanding as to the nature and purpose of a motion for a directed verdict. Such a motion, as its function and scope are understood in this jurisdiction, does not admit of the inferences which form the necessary basis of the majority view. There is nothing in the expressed or necessarily implied purpose of the plaintiff's motion for the direction of a verdict in his favor that suggests a waiver of any right, or an offer to submit the facts to the court. ⟨By his motion he says in effect that the evidence is sufficient to support a verdict for him and that reasonable men can reach no other conclusion. This is an assertion and not a concession. The motion invokes the consideration by the court of the validity of this assertion and nothing more. True the issue thus presented is to be found by the presiding justice as a fact, but, because the question is one solely within the province of the court, it is called and treated as a question of law⟩ *Lee* v. *Chamberlain, ante,* 182 and cases cited; *Ordway* v. *Railroad,* 69 N. H. 429, 434. ⟨In reaching his conclusion upon this question of law the court passes, not upon the weight of the evidence, but upon its probative character and conclusiveness. That is all the motion asks the court to do, and the motion is addressed to no one else. We fail to see in this operation the remotest implication of an offer to join with the defendant in submitting the disputed questions of fact to the court in case of an adverse ruling followed by a like motion by his adversary. In submitting separate successive motions, each followed by a denial, the acts, claims and purposes of the parties throughout are independent, adverse and antagonistic.⟩ *Manska* v. *Company,* 191 Iowa, 1284, 1286; *Virginia-Tennessee &c. Co.* v. *Hodges,* 126 Tenn. 370. It is true that the position of each is predicated upon the asserted absence either of conflicting evidence or of any evidence adverse to him, but this is not because of the consensus, but because of the very disparity, of their views in which they are diametrically opposed. The plaintiff's assertion of the strength of his evidence cannot be construed as a concession of its weakness. Neither party concedes, if he is in error in his view as to the want of adverse evidence or of the conclusiveness of the evidence in his favor, that there is no conflict therein.

The contrary is the only natural inference. *Fitzsimons* v. *Company*, 86 Vt. 229, 233. It seems to us illogical to hold that any meeting of minds may be implied from the separate adverse acts of the parties in pursuance of antagonistic purposes, much less that such acts conclusively import an agreement.

When a plaintiff places a case upon the jury list he elects his constitutional right to a jury trial. Until the contrary appears the presumption is that he is persisting in this elected right. It is true that, at any time during the trial, he may waive the right. He may do this by express stipulation or by conduct, but in the latter case such conduct must be inconsistent with the right already asserted. *King* v. *Hutchins*, 26 N. H. 139, 140; *Parker* v. *Burns*, 57 N. H. 602, 604. It must amount to an estoppel. *Duval* v. *Insurance Co.*, 82 N. H. 543, 546, 547. The claim that a plaintiff has waived his jury right at most presents a question of fact for the trial justice. *Boyd* v. *Webster*, 58 N. H. 336, 337. This fact cannot be found without evidence. The only conduct of the plaintiff relied upon to supply the necessity of such evidence is his motion for a directed verdict. This is a mere procedural act and as such can have "no other evidentiary effect than it was intended to have; and its intended effect depends upon, and is explained by, the ordinary rules of judicial procedure." *Cohn* v. *Saidel*, 71 N. H. 558, 569. ҀA motion for a directed verdict with us is merely the adopted procedural method of invoking a peremptory determination by the trial justice of the conclusiveness of the proof in the mover's favor, or the want of any evidence adverse to him, and, in case of its denial, a first step in the process of preserving his right to a correction of error if any. Its sole purpose being to raise a question of law in behalf of the mover, it is unrelated to any subsequent act of his adversary and carries no unexpressed intention which can inure to the latter's advantage. "Its legal significance as evidence is necessarily limited by the purpose of its use." *Cohn* v. *Saidel, supra.* See *State* v. *LaRose*, 71 N. H. 435, 440; *Collins* v. *Benson*, 81 N. H. 10, 11; *Lafferty* v. *Houlihan*, 81 N. H. 67, 74; *Smith* v. *Fellows*, 58 N. H. 169. Since, under our procedure, there is no inconsistency between the act of invoking the consideration of the court upon a question of law and the continued insistence upon the jury right such act is no evidence of waiver by conduct. Much less is it conclusive evidence of such an intent, upon which alone the defendants' contention here can be sustained. Mutual motions for judgment made for the purpose of raising questions of law do not in this state establish a waiver of the right to a jury trial

as a matter of law. *Errol* v. *Bragg*, 64 N. H. 21, 22. The same applies to mutual motions for directed verdicts. The defendants' motion to dismiss the jury was properly denied.

It is conceded that the defendants' exceptions to the denial of a requested ruling and to the denial of their motion for directed verdicts raise practically one and the same question.

The admissibility of opinion evidence to the effect that there was no difference in hazard in the use, under like circumstances, of oil stoves and brooders, presented a question for the trial justice. As there was evidence of the qualifications of the witnesses an exception to the ruling raises no question of law. *Gardner* v. *Company*, 79 N. H. 452, 455. There was no error in the admission of evidence that the brooder was of a type in common use. The defendants' exceptions to the evidence are overruled.

Counsel for the plaintiff proceeded in his argument on the assumption that notice to the companies of the use of brooders on the insured premises, at and prior to the date of the policy, could be inferred from the casual and unofficial knowledge of the defendants' agent placing the insurance. Upon being advised that it would be ruled, and the jury would be instructed, that neither the agent nor the companies had such knowledge, he requested the jury not to consider what he had said as evidence of such notice. While counsel reluctantly yielded to this apparently unexpected ruling, and with some difficulty adjusted his argument to the changed situation, there appears to have been no intentional disobedience of the law of the trial (*Cavanaugh* v. *Assurance Corp'n*, 79 N. H. 186); nor do we discover any statements of fact which were not in evidence or might not reasonably have been thought to be inferable therefrom.

Exception was also taken to the following statements in the plaintiff's argument: "My client is damaged $500, and these defendants are trying to get out of it on a *technicality*," "it is not a *legitimate defence.*" The objection was to the use of the words which we have italicized. It is apparent from the context that this language was addressed to the defences that a brooder was not an oil stove within the terms of the policy, and that the general permission to use such stoves did not include their use in the barn chamber. The word "technicality" was used in its more popular sense as charging the use of "a quibbling nicety" in interpreting the language of the policy. Marsh's Thesaurus Dict. The words were but forcible characterizations, from the plaintiff's viewpoint, of the defendants' position

as to the law. *Davis* v. *Avery*, 81 N. H. 219, 220; *State* v. *Bozek*, 81 N. H. 277, 278; *Williams* v. *Railroad*, 82 N. H. 253.

Neither exception to the allowance of the arguments can be sustained.

*Judgment on the verdict.*

All concurred.