Carroll
No. 80-328

## DANVERS SAVINGS BANK

v.

## RICHARD G. HAMMER

January 15, 1982

2

*Barrett & McNeill P.A.*, of Durham (*Malcolm R. McNeill, Jr.*, on the brief and orally), for the plaintiff.

*Schroeder & McLetchie*, of Ossipee (*Erland C. L. McLetchie* on the brief and orally), for the defendant.

Douglas, J.   On February 9, 1970, Richard Hammer borrowed $7,000 from the Danvers Savings Bank and executed a promissory note in favor of the bank. The note was secured by land in Boxford, Massachusetts. After the defendant defaulted, the bank fore-

closed on his property. No potential buyers attended the foreclosure sale except bank representatives. They purchased the defendant's real estate for $100, and later resold it for $2,025. The bank sought a $10,040.02 deficiency judgment against Hammer, consisting of the sum of the $7,000 principal due under the note, $1,523.55 in accrued interest, $1,237.88 in taxes, $709.50 for legal notices of the foreclosure sale, $150 for an auctioneer, and $1,444.09 for legal fees and expenses, less a credit of $2,025, the resale price. The Superior Court (*Temple*, J.) granted the bank's motion for a directed verdict on July 9, 1980, awarding the bank a $10,040.02 deficiency judgment. The defendant appealed to this court, and we remand.

Prior to trial, the parties agreed to submit three questions to the jury for "advisory opinions": whether the bank had conducted its foreclosure sale reasonably; whether certain costs incurred in conducting the sale were reasonable; and what the foreclosed property was worth when sold. The jury concluded that the bank had not acted in good faith, that the foreclosure costs were excessive, and that the foreclosed property was worth $15,000. The court, contrary to the jury's advisory opinions, awarded the bank a $10,040.02 verdict. The defendant argues that the court was bound by the jury's advisory opinions. We disagree.

■ The record is replete with testimony that the jury's function was purely advisory. At the close of the bank's case, the court refused to rule on the defendant's motion for dismissal or directed verdict until it had received the jury's advisory opinions. The trial judge explicitly retained "the legal issues concerning the determinations of the Massachusetts law by case law and statute as to whether or not the sale was properly conducted . . . and whether or not the plaintiff would be entitled to the costs . . . principal and interest stated in the note. So in view of the *law of the trial* as stated to counsel earlier, the Court will not make these determinations on the Massachusetts law *until after* we have received the advisory decisions from the jury." (Emphasis added.) In its July 9, 1980, findings and rulings, the court stated that the jury's role was to render advisory opinions and that "[i]t was understood that ultimately, under this procedure, that disposition would rest with the Court's review of, and interpretation of, Massachusetts statutes and case law." The court granted the bank's motion for a directed verdict after considering "the jury's advisory opinions, memoranda and relevant statutes and case law."

■ Even if Richard Hammer did not assent to the advisory opinion procedure and originally elected a jury trial, he waived the

right to a jury trial by his conduct. *See Stevens v. Insurance Co.*, 84 N.H. 275, 283, 149 A. 498, 504 (1930). The trial judge made it clear throughout the trial that he would ultimately decide the case on the basis of Massachusetts statutes and case law, and the defendant never objected. Thus, Richard Hammer waived his right to have a jury make the ultimate determination by conduct inconsistent with the right. *Manchester Housing Auth. v. Arms Textile Mfg. Co.*, 114 N.H. 346, 348–49, 320 A.2d 640, 641 (1974). He is "bound by the proceedings as they were conducted" and the law of the trial. *Poisson v. Manchester*, 101 N.H. 72, 75, 133 A.2d 503, 505 (1957). Because the jury's opinions were merely advisory, the trial judge was free to reach different conclusions based on his reading of Massachusetts law. The court, however, erred as a matter of law in awarding the bank a $10,040.02 deficiency judgment.

Richard Hammer's mortgage included a statutory power of sale that allowed the bank to sell his property if he defaulted. *See* MASS. GEN. LAWS ANN. ch. 183, § 21 (West). In conducting the foreclosure sale, the bank complied with the proper statutory procedures, *see id.;* MASS. GEN. LAWS ANN. ch. 244, §§ 17A–17B (West), but Richard Hammer argues that the price paid for his land was so inadequate that we should infer bad faith and invalidate the sale or award him damages.

■■ When a mortgagee seeks to uphold a foreclosure sale in order to bring a deficiency action against the mortgagor, courts scrutinize the sale price very closely to assure that the mortgagee acted with strict impartiality. *See* G. OSBORNE, G. NELSON, & D. WHITMAN, REAL ESTATE FINANCE LAW § 7.21, at 480 (1979) (hereinafter REAL ESTATE FINANCE LAW). We will review this sale with particular caution because the bank purchased the mortgaged property at its own foreclosure sale.

■■ The validity, method and effect of a mortgage foreclosure are determined by the law of the place where the land is located, *Worcester &c. Sav. Inst. v. Somerville Milling Co.*, 101 N.H. 307, 308, 141 A.2d 885, 886 (1958), *cert. denied*, 358 U.S. 278 (1959), and therefore we will apply Massachusetts law. Under Massachusetts law, the bank had the right to purchase at its own foreclosure sale. MASS. GEN. LAWS ANN. ch. 183, § 25 (West). The price paid, however, was so grossly disproportionate to Hammer's debt and the value of the property "as to indicate bad faith or lack of reasonable diligence." *Chartrand v. Newton Trust Co.*, 296 Mass. 317, 320, 5 N.E.2d 421, 423 (1936). Generally, an inadequate price will not invalidate a sale or entitle the debtor to damages. A grossly disproportionate price, however, indicates that the sale was improp-

erly conducted, entitling the debtor to relief. *Id.* at 321, 5 N.E.2d at 423. *See* REAL ESTATE FINANCE LAW, *supra* § 7.21, at 479–80; *Meredith v. Fisher*, 121 N.H. 856, 435 A.2d 536 (1981); and *Merrimack Ind. Trust v. First Nat. Bank of Boston*, 121 N.H. 197, 427 A.2d 500 (1981).

■ The debtor in this case is entitled to relief. At trial, a bank official testified that the bank had "no particular reason" for bidding only $100 for property securing a $7,000 debt and which the bank later resold for $2,025, over twenty times the bid price. The bank did not have the land appraised, and had no opinion at trial as to what the land was worth when sold. The bank was not reasonably diligent, *see Chartrand v. Newton Trust Co.*, 296 Mass. at 320, 5 N.E.2d at 423, in submitting such an arbitrary bid. In addition, in its advertisements of the foreclosure sale, the bank stated that a minimum of $1,000 of the purchase price had to be paid at the time and place of sale. Nothing in the Massachusetts statutes or cases indicates that this advertisement chilled bidding or established a mandatory minimum bid, but it does illustrate the inadequacy of the bank's $100 bid. Thus, the trial court erred in ruling that the defendant did not sustain his "burden of showing misconduct on the part of the plaintiff."

■■ Because title to the property has passed to bona fide purchasers, we will not set aside the foreclosure sale, *see Cambridge Savings Bank v. Cronin*, 289 Mass. 379, 382, 194 N.E. 289, 290 (1935); REAL ESTATE FINANCE LAW, *supra* § 7.21, at 478. We therefore remand for a reassessment of damages. *Id.* The trial court must first determine the fair market value of the real estate at the time of foreclosure. The damages should consist of the difference between that market value and the defendant's outstanding debt plus costs.

■ If the proven market value exceeds the outstanding debt plus costs, the excess should be awarded to the defendant. *See Boston v. Gordon*, 342 Mass. 586, 595, 175 N.E.2d 377, 383 (1961).

■ The defendant argues that the bank should not have been allowed to recover a deficiency judgment. We disagree. When a mortgagee notifies the debtor of its intention to foreclose, and of the debtor's possible liability for a deficiency judgment, in accordance with MASS. GEN. LAWS ANN. ch. 244, § 17B (West), a deficiency may be recovered. *See Guempel v. Great American Ins. Co.*, Mass. App. , , 420 N.E.2d 353, 356 (1981).

■ Richard Hammer next contends that the trial court should

not have allowed the bank to recover the various costs it incurred in conducting the foreclosure sale. The defendant's mortgage allows the bank only to "retain" costs, charges, and expenses from the proceeds of a foreclosure sale. The defendant argues that there was no fund from which these expenses could be retained, therefore the bank has no right to recover them. In *Security Cooperative Bank v. Corcoran*, 298 Mass. 156, 158, 10 N.E.2d 57, 58 (1937), the court held that reasonable foreclosure expenses may be charged to the debtor. In that case, "[t]he bank made no mistake in adding to the balance of principal due on the note . . . the expenses of foreclosure and then crediting on account the full price for which the premises were sold. This was a proper method of ascertaining the deficiency. . . ." *Id.*, 10 N.E.2d at 58. The mortgagee in *State Realty Co. of Boston, Inc. v. MacNeil Bros. Co.*, 334 Mass. 294, 304–05, 135 N.E.2d 291, 298 (1956), was allowed to charge the debtor for legal services incurred to establish and maintain possession of the foreclosed premises. Foreclosure expenses, therefore, were properly included in the bank's deficiency judgment.

*Remanded for reassessment of damages.*

All concurred.