Rockingham
No. 88-370

## Frederick W. Lowell

v.

## The U.S. Savings Bank of America, Joseph Fanaras, Charles Mutrie, Jeffrey Breiseth and James Walsh

March 8, 1990

*Hamblett & Kerrigan P.A.*, of Nashua (*John P. Griffith & a.* on the brief, and *Mr. Griffith* orally), for the plaintiff.

*Merrill & Broderick*, of Manchester (*John T. Broderick, Jr.*, and *Mark W. Dean* on the brief, and *Mr. Broderick* orally), for The U.S. Savings Bank of America.

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Bruce W. Felmly* on the brief and orally), for Joseph Fanaras.

*Brown and LaPoint P.A.*, of Exeter, for defendants Mutrie, Breiseth and Walsh, joining in the briefs of The U.S. Savings Bank of America and Joseph Fanaras.

THAYER, J. Frederick W. Lowell (Lowell or the plaintiff) appealed, and The U.S. Savings Bank of America (the bank) cross-appealed, a decree of the Superior Court (*Gray*, J.) ruling that the bank breached Lowell's ten-year employment contract by failing to articulate in its termination vote the reason for the plaintiff's dismissal, and that the damages were limited to the amount of Lowell's salary from the date of his wrongful termination until the date when the bank properly terminated his employment. Lowell claims that he was improperly denied the right to a jury trial and that the trial court erred in not awarding as damages the full amount due under the contract for the balance of the contract's term. The bank, on the other hand, alleges that the trial court erred in finding that the bank breached Lowell's employment contract after determining that just cause existed for terminating the plaintiff's employment, and argues that Lowell is not entitled to any damages. For the reasons set forth below, we affirm the trial court's decision to hear the case without a jury and reverse the trial court's ruling on the breach of contract issue, holding that the bank did not breach Lowell's employment contract by failing to include in its internal minutes the reason for discharging the plaintiff.

The record indicates that Lowell was the founder of The U.S. Savings Bank of America, which opened for business in June of 1984. In February of 1984, the stockholders authorized the board of directors (the board) to enter into an employment contract with the plaintiff as president of the bank. On August 13, 1984, Lowell and the bank executed a ten-year employment contract. Unlike other contracts in the banking industry, Lowell's contract did not contain an express "for cause" dismissal clause. However, the contract did provide that Lowell would:

"devote his full time and attention to the Employer's business and [would] employ his best efforts in the performance of his duties [t]hereunder, which shall include such duties as may from time to time be assigned to him by the Board of Directors, subject to the general direction and control of the Board of Directors of the Employer."

The trial court found that Lowell's tenure as both a promoter and president of the bank was marked by a course of "misconduct" in violation of his fiduciary and professional obligations. Specifically, the trial court found that, contrary to his "duty to disclose," Lowell had failed to inform potential investors, and later his employer, that he had been terminated from his three most recent banking positions. Regarding the employment contract, the trial court found that Lowell had wrongly informed the board that his contract was similar to the contracts other banks had with their key officers. Even after the Federal Deposit Insurance Corporation (FDIC) realized that Lowell's contract did not contain an express "for cause" dismissal clause and asked the plaintiff to amend the contract, Lowell failed to do so.

The trial court found that, as an officer, Lowell consistently refused to take advice from the board. The plaintiff's insubordination ranged from the failure to prepare a thorough and timely budget, to the continued employment of several family members over the objections of the board, to the intentional withholding from the board for forty-two days of a highly critical letter from the FDIC addressed to the board requesting a "full report" within forty-five days. The trial court noted that while the letter from the FDIC suggested possible criminal penalties the bank might have been subject to, indicating that the bank's future was in a precarious position, Lowell permitted the letter to "h[a]ng around like an unpaid bill." In addition to the aforementioned acts, the trial court found that Lowell engaged in "the most blatant example of misconduct" when he and his son-in-law, both paid employees of the bank, directed business away from the bank by securing financing from another bank for a customer of U.S. Savings, in an effort to achieve personal gain.

Throughout much of his tenure, Lowell enjoyed the benevolent protection of a majority of the board. As the board became aware of Lowell's misconduct, however, dissension grew among the board members and different factions formed. On December 29, 1986, after a new board of directors had been seated, the board found that Lowell had breached his contract with the bank and voted unanimously to terminate Lowell's employment as president,

effective January 2, 1987. The trial court found that the board intentionally chose not to cite specific instances of Lowell's misconduct which supported its vote. Instead, the motion made at the December 29, 1986 board meeting to terminate Lowell's employment merely stated that Lowell "has not and is not executing his office in a satisfactory manner."

As a result of the board's termination of Lowell's employment, Lowell instituted suit by a writ of summons dated July 31, 1987, against the bank and its directors, alleging breach of contract, malicious breach, wrongful discharge, and tortious interference with contractual relations. Lowell failed to request a jury trial when he filed his writ. However, when the defendants' counsel filed their appearance, they preserved the defendants' rights to a trial by jury pursuant to Superior Court Rule 8.

In addition to his contract action, Lowell was involved in seven separate suits against the bank, four of which were still pending at the end of 1987. *See, e.g., Palmer v. U.S. Savings Bank of America,* 131 N.H. 433, 553 A.2d 781 (1989). In an apparent effort to achieve judicial consistency and economy, Chief Justice Dunfey assigned a single trial judge to hear all of the pending suits. During a hearing on January 28, 1988, at which all of the parties were present, the trial judge offered the defendants the choice of retaining their rights to a jury trial, which would be scheduled for the fall of 1988, or of voluntarily waiving their jury trial rights in exchange for a more timely bench trial. Counsel for the defendants agreed to waive their rights to a jury trial. Then, in the presence of all the parties' attorneys, the court clerk scheduled a bench trial to begin on May 2, 1988.

On February 5, 1988, Lowell filed an objection to the defendants' withdrawal of their request for a jury trial. Lowell argued in his objection that he had relied on the defendants' request for a jury trial and therefore had made no effort to revoke his waiver. He claimed that the withdrawal of a jury request by the defendants required the consent of all parties to be effective, and that he had not given his consent. The trial court apparently did not rule on the plaintiff's objection, and on March 14, 1988, Lowell moved for a voluntary non-suit, without prejudice. The bank filed a motion objecting to the plaintiff's taking a non-suit, and on April 5, 1988, the trial judge held a hearing to discuss, among other things, Lowell's request for a voluntary non-suit. At an earlier hearing, counsel for Lowell had indicated that his client did not intend to drop any claims he had against the defendants, and at the hearing on April 5, he disclosed an additional motivation for seeking a

voluntary non-suit. He explained that what he really wanted was to obtain a different judge to hear his case. Lowell's attorney stated:

"I think your Honor has indicated a clear prejudice against Mr. Lowell, and I think to go before you and to place his life and property at your disposal is not a fair thing to ask you to do."

By order dated April 7, 1988, the trial judge indicated that the delays and uncertainties that would result from permitting a voluntary non-suit without prejudice would prevent the defendant bank from obtaining the recapitalization necessary for its continued existence, and would signal a "death knell which would prevent the bank from financial security." Concluding that the granting of the plaintiff's motion for non-suit would result in "manifest unjustness" to the defendants, the court refused to allow the non-suit without prejudice. The court then stated:

"Counsel for the plaintiff has stated on the record that the real purpose of the motion is not so much to obtain a jury trial as it is to judge-shop because of claimed bias on the part of the assigned justice. The Court, firstly, is not biased to any degree whatsoever and, secondly, will not facilitate what it considers improper use of the nonsuit process."

The suit proceeded to a trial on the merits before the assigned trial judge. Although Lowell's employment contract was never amended to include a "just cause" dismissal clause pursuant to the FDIC's recommendation, counsel for Lowell conceded during trial that the contract permitted the bank to discharge his client as long as it had cause. Thus, the "no-cut" contract essentially became a "for cause" contract. After fourteen days of trial, the trial judge found for the defendants on three of the four counts, none of which Lowell contests. On the breach of contract claim, however, the trial court found that while just cause existed for dismissing the plaintiff, the bank had breached Lowell's employment contract because "the board failed to set forth facts on December 29th, 1986 which could allow the legal conclusion that Mr. Lowell was terminated for just cause." Recognizing that the directors might legally vote to terminate the plaintiff in the future by specifying the cause for his termination, the court determined that Lowell's damages equaled the amount of salary from the date of his wrongful termination until such date as the board should properly terminate the plaintiff's employment, if ever.

On July 13, 1988, the board again voted unanimously to terminate Lowell's employment contract. On July 18, 1988, Lowell filed a motion for clarification, seeking a damage award stated in a sum certain. The bank filed a response to the plaintiff's motion in which it informed the court that it had lawfully terminated the plaintiff on July 13, 1988, and that the time period for the assessment of the damage award should therefore extend only from January 2, 1987, to that date. Accordingly, the trial court awarded Lowell damages in the amount of $104,272.48.

 The first issue we will address on appeal is the plaintiff's claim that the trial court violated his constitutional right to a trial by jury by permitting the defendants to withdraw their requests for a jury trial over the plaintiff's objection. According to Lowell, the New Hampshire Constitution guarantees him an unqualified right to a trial by jury. While we have held that part I, article 20 of our State Constitution affords the parties to a suit involving legal claims the right to a jury trial, *McElroy v. Gaffney*, 129 N.H. 382, 386, 529 A.2d 889, 891 (1987), we have also held that this right may be waived, *Sperl v. Sperl*, 119 N.H. 818, 820, 408 A.2d 422, 423 (1979) (citing *Nassif Realty Corp. v. National Fire Ins. Co.*, 107 N.H. 267, 220 A.2d 748 (1966)). A party to a legal action properly invokes his or her right to a jury trial by following the procedure set out in Superior Court Rule 8, which provides:

> "A party desiring a trial by jury shall, if plaintiff, so indicate upon the writ at the time of entry, and, if defendant, upon the initial appearance card at the time of filing thereof.
>
> Failure to request a jury trial in accordance with this rule shall constitute a waiver thereof."

While there is no rule describing how a party may waive his or her right to a trial by jury once this right has been elected, we have determined that a party may waive his or her right either by express stipulation or by conduct. *Stevens v. Insurance Co.*, 84 N.H. 275, 283, 149 A. 498, 504 (1930); *see Danvers Savings Bank v. Hammer*, 122 N.H. 1, 3–4, 440 A.2d 435, 437 (1982).

 The plaintiff in the instant case waived his right to a trial by jury when he failed to indicate his desire for a jury trial on his writ. *See* SUPER. CT. R. 8. Lowell argues, however, that once the defendants invoked their right to a jury trial, he was entitled to rely on their demand, and that the defendants should not have been permitted to waive their right without his consent. Lowell relies

on Rule 38(d) of the Federal Rules of Civil Procedure and similar procedural rules of other States to argue that the defendants' request for a jury trial inures to the benefit of all parties, so that the request may not be withdrawn without the consent of all parties. While this may be the rule in federal courts and various State courts, such a rule has not yet been adopted by the New Hampshire courts. Therefore, since the defendants waived their right to a jury trial, the trial court did not err in trying this suit as an issues to court case, and we so hold.

The next issue we will address on appeal is the defendants' argument that the trial court erred in finding that the bank breached Lowell's employment contract after determining that just cause existed for terminating the plaintiff's employment. As we discussed above, the trial court found that Lowell engaged in gross misconduct in his capacity as both a promoter and president of the bank, contrary to his fiduciary and professional obligations. However, despite its determination that Lowell's misdeeds constituted just cause for his dismissal, the court found that the bank breached Lowell's contract by failing to specify the exact reasons for discharging Lowell when the termination vote was taken on December 29, 1986. Specifically, the court stated: "Cause did exist, ... but cause must at the least be set down in the record when terminating a contract 'for cause.'" The court continued, later in its decree, that "[t]he record of the vote taken on December 29, 1986 ... does not adequately set forth facts upon which a legal or factual conclusion of just cause can be determined."

Although Lowell's employment contract did not contain an express "just cause" dismissal clause, his counsel acknowledged during trial that the contract permitted the bank to discharge him for cause. However, the contract did not specify a particular procedure the bank had to follow in order lawfully to terminate Lowell's employment. Despite this, the trial court found that the bank unlawfully discharged the plaintiff because the defendants failed to record the reasons during its board meeting on December 29, 1986.

▉ The law is well settled that the parties to a contract freely and openly entered into are bound by its terms, *Mills v. Nashua Federal Savings and Loan*, 121 N.H. 722, 726, 433 A.2d 1312, 1315 (1981), and a court cannot rewrite the contract unless the instrument fails to express the parties' intentions when they entered into the agreement, *see Gosselin v. Archibald*, 121 N.H. 1016, 1020, 437 A.2d 302, 306 (1981); *Thiem v. Thomas*, 119 N.H. 598, 603, 406 A.2d 115, 118 (1979). The record indicates that none of the parties,

including Lowell, ever claimed that the contract required the board to record the specific basis for termination at the time the vote was taken. Moreover, there is no evidence suggesting that when the parties executed the employment contract they intended to require the board to state its reasons for dismissal contemporaneously with any vote to terminate the plaintiff's employment. For these reasons, it was error for the trial court to rewrite the parties' contract and insert a provision which the parties had never intended to be a part of the contract.

While we agree with the trial court that an employer must offer an employee a proper reason for his or her discharge under a "for cause" contract, we do not agree that this reason must be set forth in the employer's internal minutes when the vote to dismiss the employee is taken. Additionally, in response to our questions during oral argument concerning Lowell's notice of the grounds for his discharge, Lowell failed to refer to evidence that he had either raised the issue of notice in his pleadings or requested the trial court to find that he had not received notice of the reasons for his termination. In light of this, we hold that the trial court erred in finding that the bank breached Lowell's employment contract when it failed to set forth the basis for its decision to terminate his employment during its meeting on December 29, 1986, and we reverse the trial court's award of damages to the plaintiff.

Lastly, Joseph Fanaras has requested that this court exercise its discretion under Supreme Court Rule 23 and award him reasonable attorney's fees related to this appeal. Because we cannot say that Lowell's appeal was either frivolous or in bad faith, we deny the defendant's request. *See* Sup. Ct. R. 23.

*Affirmed in part and reversed in part.*

All concurred.