Hillsborough,
Jan. 2, 1923.

ALFRED C. PFFEFFERKORN *v.* HAROLD M. LEWIS & a.

One who had practiced veterinary medicine in another state prior to the enactment of Laws 1901, *c.* 59, is exempt from its operation.

BILL IN EQUITY, to compel the defendants, members of the board of veterinary examiners, to register the plaintiff and issue license to him to practice veterinary surgery and medicine under the provisions of Laws 1901, *c.* 59, as amended by Laws 1915, *c.* 79, and Laws 1919, *c.* 109, relative to the registration of veterinary surgeons. Whether the plaintiff is entitled without examination to be so registered and licensed was reserved without ruling as an important question of law by *Sawyer,* J., at the May term, 1922, of the superior court.

The facts are stated in the opinion.

*McLane & Davis (Mr. Davis* orally), for the plaintiff.

*Oscar L. Young,* attorney-general (by brief and orally), for the defendants.

SNOW, J. Laws of 1901, *c.* 59, entitled "An act to protect and regulate the use of the name or title of veterinary surgeon or V. S.", forbade under penalty the use of such title or name after June 1 of

that year by any person, unless registered in accordance with the provisions of the act. The act created a board of veterinary examiners, and provided that graduates of a lawfully constituted college or institution of veterinary science should be granted registration by the board upon the payment of a fee of $2, and that other persons should be granted such registration upon passing an examination and payment of a fee of $5. Section 5 provided, "This act shall not apply to persons who at the time of the passage of this act are engaged in the practice of veterinary surgery and medicine."

Laws of 1915, c. 79, by amendment of the act of 1901, extended the statutory restriction to the practice of the profession as well as to the use of the title or name. The legislature of 1919, by further amendment of the act of 1901, and by partial repeal and substitution, enacted a comprehensive statute providing for the registration of all persons practicing veterinary medicine, surgery and dentistry. Laws 1919, c. 109, s. 6, of this act provided that "Any person who under the law existing prior to the passage of this act was entitled to practice veterinary medicine, surgery and dentistry in any of their branches or departments may become registered as an existing practitioner and upon satisfying the board of that fact, shall receive from said board a license of registration without charge."

The plaintiff was not a graduate of a college or institution of veterinary science, but had been engaged in the practice of veterinary surgery and medicine at Lawrence, Massachusetts, from July 1, 1900, to June 29, 1901, when he became a resident of Manchester in this state, where he continued the practice until February 20, 1920. Upon taking up his residence in Manchester, he applied to the board of veterinary examiners for registration and license. No action was taken by the board upon his application. In 1914, the plaintiff's attention was called by the board to the fact that he was not registered and licensed. He ignored the suggestion, and the board did not press the matter. After the passage of the amendment of 1919, the plaintiff applied for registration and license without examination under the amended act, and was refused. He thereupon took the examination under protest, and failed to pass, when he was forbidden to practice. The plaintiff by his bill now seeks an order requiring the defendants to issue to him a license of registration without charge.

The question reserved involves the construction of the Laws of 1901, c. 59, s. 5, for if the plaintiff was excepted from the require-

ments of that act, he was, at the time of the passage of the act of 1919, a person entitled to practice veterinary medicine, surgery and dentistry, and therefore, under *s.* 6 of the latter act, entitled to registration without examination or charge.

Counsel for the state contends that, by the language of *s.* 5 of the act of 1901, excepting from its provisions persons "engaged in the practice of veterinary surgery and medicine," the legislature intended only persons engaged in such practice within the state. The only argument offered in support of such construction is that it is unreasonable to assume that the legislature intended to leave the field open to veterinarians wherever practicing and residing. This argument has little force in view of the fact that prior to the date when this act took effect, there had been no restrictions whatever upon such practice. This fact and the order of the provisions of the act indicate something of the course of legislative reasoning. The act, having provided for the appointment, tenure of office, remuneration and organization of the board and for the rules governing examinations, *ss.* 2, 3, 4, proceeds first to except from its operation persons then engaged in practice, *s.* 5. Having thus excluded from all requirements of the act persons whose qualifications were evidenced by experience derived from practice, the legislature proceeded to deal with the only two classes of persons affected by the act, and of whom alone a public record was required to be kept (*s.* 8), namely, (1) graduates whose diploma entitled them to registration, *s.* 6, and (2) persons, being neither graduates nor practitioners, whose qualifications could be ascertained only upon examination, *s.* 7. The very evident purpose of the legislature was to raise the standard of the profession by restricting the admission of those beginning its practice, without a college training, to persons having the minimum degree of proficiency prescribed by the statutory rules governing examinations.

In defining the class excepted from the provisions of the act, the legislature, by the language used, expressed a willingness to accept as proof of proficiency evidence of experience in practice without limitation, either as to the extent of such experience or as to the place where it was acquired. Had it been the intention to limit the class excepted to persons whose experience had been acquired within the state, it is unlikely that such legislative purpose would have been left to implication. The probable difference in skill of practitioners arising from the mere accident of residence is not so striking as to give rise to such an unexpressed inference.

Moreover, there are grounds for the belief that the words sought to be interpolated by construction in Laws 1901, *c.* 59, *s.* 5, were intentionally omitted to avoid the possibility of constitutional objections. The interpretation of a similar statute regulating the practice of dentistry and medicine containing an analogous exception, and the doubts therein expressed as to its constitutionality, may well have influenced the legislature to avoid possible discrimination between the citizens of this and of other states. G. L., *c.* 132; *State* v. *Hinman*, 65 N. H. 103; *State* v. *Pennoyer*, 65 N. H. 113. The legislature is presumed to have acted with a view to the declared law of the state. It has been suggested in argument that these decisions are in conflict with authorities in some other jurisdictions and might not now be reaffirmed. To this it is a sufficient answer that their effect on the legislative mind is not necessarily dependent upon their soundness, which is not here in issue and has not been considered.

Neither the plaintiff's unnecessary and unheeded application for registration under the act of 1901, nor his submission under protest to an unnecessary examination held under the act of 1919, was a waiver of his right. The adverse and unauthorized finding of the board upon his qualifications was immaterial to the issue here presented.

For the reasons above stated, the plaintiff is entitled to receive a license of registration without charge under Laws 1919, *c.* 109, *s.* 6.

*Case discharged.*

All concurred.