680

Strafford
No. 7368

JOSEPH MOORE

v.

DOVER VETERINARY HOSPITAL, INC.

November 30, 1976

*Barrett & McNeill (Mr. John T. Barrett III* orally) for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Fred L. Potter (Mr. Potter* orally) for the defendant.

PER CURIAM. Dr. Joseph Moore, of Durham, a veterinarian, in-

stituted this suit for declaratory judgment seeking to have declared unenforceable a restrictive covenant entered into with his former employer, the Dover Veterinary Hospital, Inc., of Dover. Under the covenant, Dr. Moore promised not to compete with the hospital in any part of the area within a 20-mile radius of the hospital for a period of five years from the date of termination of his employment. The matter was heard before a Master (*Charles T. Gallagher*, Esq.) who made written findings and recommended that the covenant be held enforceable. This recommendation was approved by the Trial Court (*Dunfey*, J.), which reserved and transferred plaintiff's exceptions.

Dover Veterinary Hospital, Inc., is a close corporation of which Dr. Edward Lemos is the sole stockholder, chief executive officer, president, and treasurer. Dr. Lemos and his wife both function as corporation directors. Dr. Lemos began practice in Dover in 1958 as a sole proprietor and did not form the corporation until 1967. The business grew both in size and in its reputation for animal care, until it became one of only approximately forty animal hospitals in the United States certified by the American Animal Hospital Association.

The largely undisputed evidence showed that since 1962, Dr. Lemos had successfully employed several veterinarians as associates at the hospital. Typically, they were recent graduates of veterinary schools. All signed contracts containing restrictive covenants and permitting termination of the employment relationship by either party without cause upon thirty-days notice. The plaintiff's association with the defendant began with a period of summer employment while plaintiff was a veterinary student at the University of Pennsylvania Veterinary School of Medicine. This summer experience provided the basis for a "memorandum of agreement" between the parties made April 7, 1970. Under the agreement, the plaintiff promised to commence work at the Dover Hospital on or about July 1, 1970, at a starting salary of $825 per month. The agreement contained the previously mentioned restrictive covenant and provision for termination upon thirty-days notice. The plaintiff fully understood the nature of the restriction to which he had consented.

Plaintiff's employment with defendant lasted almost four years, until April 1, 1974. His tenure at the hospital was marked by continuing difficulties with the parties' efforts to maintain a third veterinarian on the staff. Although not mentioned in the memorandum agreement, the prospect of a three-man practice,

with its beneficent impact on otherwise very long working hours, had been a matter of considerable importance to the plaintiff, and Dr. Lemos without offering any guarantee in this regard had assured him of his intention to maintain a three-man staff. Accordingly, when plaintiff began work at the hospital in July 1970, he found himself in company with a third veterinarian. However, Dr. Lemos dismissed this employee in September of that same year, judging him in some respects unsatisfactory as an employee. The loss of the third man caused the plaintiff concern, but he agreed that the dismissed employee was not a veterinarian with whom permanent association was desirable, and that eventual termination was thus inevitable. It was not until July of 1971 that a new third man was hired. His tenure was brief: He was dismissed in January of 1972 due to an apparent slowing in the economy of the country in general and the practice in particular. The practice later rebounded and once again there was movement towards hiring a third man. In the fall of 1973, Dr. Lemos interviewed and apparently decided on a new third man, but this decision was never effectuated, in part because plaintiff himself was not impressed with Dr. Lemos' selection. No additional third man was employed before plaintiff's termination the following year.

Toward the end of plaintiff's tenure, the business of hiring a third man was sidelined by discussions with Dr. Lemos as to the possibility that the plaintiff would buy into the practice. These discussions never reached fruition, partly because Dr. Lemos insisted on maintaining decision-making control in any joint operation.

Shortly after it became evident that the discussions had failed, plaintiff left his employment at the hospital. He then filed this petition for declaratory judgment, seeking judicial approval of his intention "to practice veterinary medicine and surgery within a 20-mile radius of Dover, New Hampshire, under the trade name of 'Strafford Animal Hospital'". Plaintiff seeks this approval both on the ground that the restrictive covenant is unreasonable, and also on the ground that the entire agreement with Dover Hospital, Inc., is unenforceable by virtue of alleged contractual defects.

Initially, plaintiff contends that the defendant's failure to maintain a three-man practice during the entire term of plaintiff's employment constituted a material breach of contract, excusing the plaintiff from further contract compliance. The master ruled that this contention was unavailing, since it was found that plaintiff had acquiesced in the dismissal of both of the other employ-

ees. The record is plain that plaintiff continued to perform and to receive performance by the defendant, and thus he cannot now claim that his obligations are extinguished. *See John B. Robeson v. Gardens,* 226 Md. 215, 172 A.2d 529 (1961); 3A A. Corbin, Contracts § 755 (1960).

Second, plaintiff contends that Dr. Lemos, as president of the hospital, was without authority to bind the corporation to the employment contract, and that the agreement never became enforceable. As noted previously, however, Dr. Lemos was sole stockholder, chief executive officer and a director of the corporation. Furthermore, Dr. Lemos' wife was apparently a corporate director during plaintiff's tenure, and her conduct indicated acquiescence in the hiring decision. We thus agree with the conclusion of the master that plaintiff's argument in this regard is an empty technicality. *Holman-Baker Co. v. Pre-Design Co.,* 104 N.H. 116, 179 A.2d 454 (1962).

Plaintiff further contends that the evidence compelled the conclusion that employees of the defendant corporation were "forced" to quit because of its unreasonable employment practices, and that consequently the court should refuse to enforce the restrictive covenant "on general principles of equity." The master found, to the contrary, that plaintiff's termination was occasioned by the failure of negotiations in which both parties had proceeded in good faith. We find no error in this conclusion.

We turn now to the merits of the restrictive covenant. By the covenant plaintiff agreed that for a period of five years from the date of termination of his employment he would not "compete with [his] employer . . . in his own name or in association with any other person, either directly or indirectly, in the practice or business of veterinary medicine or surgery, or related practice or business, within the geographic area or territory described by a circle, the center of which shall be said Dover Veterinary Hospital and the radius of which is twenty (20) miles."

The master found that the restricted circle included thirty-two New Hampshire towns and cities having at least fifty percent of their territory within the circle, and also a portion of York County in Maine. There was evidence that the total population of the area is approximately 195,000, with the bulk of this number living in the New Hampshire sector; that portions of the New Hampshire area have experienced high rates of population growth over the past fifteen years, which it is anticipated will continue for several years at least. Also emphasized was the fact that the Durham area

of Strafford county undergoes a high rate of population turnover because of the presence of the University of New Hampshire.

On this record the issue is whether the restrictive covenant is lawful. In general this inquiry has proved a vexing one for the common law. *See generally, Arthur Murray Dance Studios, Inc. v. Witter,* 105 N.E.2d 685 (Ohio C.P., 1952); *Mitchel v. Reynolds,* 1 P. Wms. 181, 24 Eng. Rep. 347 (Q.B. 1711); Blake, *Employee Agreements Not To Compete,* 73 Harv. L. Rev. 625, 629, 649 (1960). In attempting to balance the policies of "freedom of contract, freedom of trade, sanctity of contract, individual liberty, protection of business, right to work, making of training available to employee, earning of livelihood for one's self and family, utilization of one's skill and talent, continued productivity, betterment of one's status, avoidance of one's becoming a public charge, encouragement of competition and discouragement of monopoly," *Arthur Murray Dance Studios, Inc. v. Witter, supra* at 692, the decisions not surprisingly have produced something less than a seamless web.

Notwithstanding the factual diversity of the cases, it has been observed that the "authorities . . . 'boil down' to the general proposition that 'the conclusion reached . . . is that the validity of the agreement depends upon the reasonableness of the restraint as applied to the particular circumstances of each case.'" *Dunfey Realty Co. v. Enwright,* 101 N.H. 195, 198, 138 A.2d 80, 82 (1957), *quoting Bancroft v. Company,* 72 N.H. 402, 406, 57 A. 97, 100 (1903); *Spaulding v. Mayo,* 81 N.H. 85, 122 A. 899 (1923); *Collins v. Bartlett Tree Expert Co.,* 112 N.H. 197, 291 A.2d 614 (1972). More particularly, it is said that a restraint on employment is reasonable only if it is no greater than necessary for the protection of the employer's legitimate interest, does not impose undue hardship on the employee, and is not injurious to the public interest. Restatement of Contracts §§ 513-15 (1932); Annots., 46 A.L.R.2d 119 (1956); 43 A.L.R.2d 94 (1955); Blake, *Employee Agreements Not To Compete, supra* at 648-49.

The defendant thus was justifiably concerned that the plaintiff could divert a significant number of its customers should he quickly enter practice in the immediate area. The situation was not unlike that which the New York courts in *Millet v. Slocum,* 4 App. Div. 2d 528, 531, 167 N.Y.S.2d 136, 139-40 (1957), *aff'd,* 5 N.Y.2d 734, 177 N.Y.S.2d 716 (1958), have thought sufficient to justify post-employment restrictions:

> "The partnership operating the clinic had been in operation since 1938 and had earned a reputation for professional competence and had developed the good will of the community. It was inevitable that the plaintiff in the course of his duties as a partner in the clinic would serve patients of the clinic and would acquire their confidence and good will. It was foreseeable that if the plaintiff be left free to compete with the clinic in the event that his connection with the partnership should be terminated at some time in the future, that the remaining partners would thereby suffer a loss of patients and good will. A profession partakes on its financial side of a commercial business and its good will is often a valuable asset."

The use of a restrictive covenant in these circumstances is not offensive. *See Allen v. Rose Park Pharmacy,* 120 Utah 608, 237 P.2d 823 (1951); 6A A. Corbin, Contracts § 1394, at 100 (1962).

The problem is whether the particular space and time restraints of this covenant are reasonable. Where the employer's clientele consists of the general public, it is ordinarily reasonable to devise the geographic restraint in terms of the employer's normal market. Blake, *Employee Agreements Not To Compete, supra* at 661. There is evidence that the twenty-mile radius represents a reasonable approximation of the employer's market. The hospital is a rather unique facility, offering comprehensive care and up-to-date facilities. Moreover, plaintiff acknowledged that animal owners would travel twenty miles to visit a veterinarian, and that he himself would expect to draw persons from twenty miles away. We affirm the finding that the geographic restraint is reasonable. *See Millet v. Slocum supra.*

Similarly, we affirm the finding that the time restraint is reasonable. The relationship between a professional and his clients tends to be enduring. In the instant case, the business entity was closely identified with the veterinarians who staffed it, and this identification would not soon be extinguished upon a veterinarian's termination. Although the population in parts of the restricted area is marked by fairly rapid growth and a high degree of transience, it does not follow that the hospital's clientele is fleeting. The evidence that the five-year restraint is a reasonable means of protecting good will which has accrued to the hospital was uncontradicted. *See Millet v. Slocum supra; Lassen v. Benton,* 86 Ariz. 323, 346 P.2d 137; 87 Ariz. 72, 347 P.2d 1012 (1959); *Allen*

*v. Rose Park Pharmacy,* 120 Utah 608, 237 P.2d 823 (1951).

Plaintiff additionally contends that even if the covenant is enforceable, it has no application to his intention to practice under the trade name of the "Strafford Animal Hospital." He argues that the restrictive covenant does not explicitly prohibit practice under a trade name or as a professional association. The covenant precludes competition with the employer "in [the employee's] own name or in association with any other person, either directly or indirectly, in the practice or business of veterinary medicine or surgery, or related practice or business . . . ." In *Bowers v. Whittle,* 63 N.H. 147, 148 (1884), it was recognized that covenants in restraint of trade are not favored and "are not to be extended by construction beyond the fair and natural import of the language used." In the *Bowers* case, the employee's covenant was not to practice dentistry "on his own account or by any agent", and was held not to unambiguously encompass the practice of dentistry as the "servant" of another. The covenant of the plaintiff herein does not expressly prohibit practice under a trade name. However, the covenant clearly precludes either a sole or joint venture by which the plaintiff would directly or indirectly compete with his former employer. The fair and natural import of the language is that practice under a trade name is prohibited.

Finally, plaintiff has contended that the covenant works to create a monopoly and to usurp the State's authority to regulate veterinary medicine, and is therefore void as against public policy. *See* RSA ch. 332, ch. 332-B (Supp. 1975); *Pffefferkorn v. Lewis,* 80 N.H. 518, 119 A. 368 (1923). The short answer is that the covenant violates no statute and applies only to the plaintiff, restricting his opportunities in only a portion of the State. *See Foltz v. Struxness,* 168 Kan. 714, 721-22, 215 P.2d 133, 139 (1950).

*Exceptions overruled.*

GRIMES and BOIS, JJ., did not sit.