Hillsborough
No. 78-293

PAUL F. THIEM d/b/a
PAUL F. THIEM ARTESIAN WELL COMPANY

v.

JAMES THOMAS

August 17, 1979

*Cleveland, Waters & Bass*, of Concord (*Robert J. Lloyd* orally), for the plaintiff.

600

*Brown & Nixon P.A.*, of Manchester (*Randolph J. Reis* orally), for the defendant.

BROCK, J. The question before us is whether certain language in a well-drilling contract can be construed as a guarantee that the contractor will establish a water-producing well as a condition precedent to receiving payment for his services.

The plaintiff, a well-drilling contractor, brought this action to recover the contract price for drilling a well hole on the defendant's land. The defendant claims that he has no obligation to compensate the plaintiff because the well hole did not produce water. Trial to the court resulted in a verdict for the defendant. The plaintiff moved to set aside the verdict on the grounds that it was contrary to the evidence and erroneous as a matter of law. The trial court granted the motion on June 30, 1978. On July 14, 1978, the trial court issued a second order abrogating its June 30 order and denying the plaintiff's motion. The plaintiff's exception was reserved and transferred by *Loughlin*, J.

■ The trial court granted most of the plaintiff's requests for findings of fact, which are binding on this court on review of a motion to set aside the verdict where the proceedings below are not recorded. *Merchants Nat'l Bank v. Adams*, 114 N.H. 46, 314 A.2d 664 (1974); *see Beaudoin v. Beaudoin*, 118 N.H. 325, 386 A.2d 1261 (1978). In September 1977, the defendant asked the plaintiff to drill a well hole on his property in Weare. After considerable discussion and negotiation, the parties came to an agreement. The plaintiff, in the defendant's presence, drafted a one-page agreement, using a preprinted form but making handwritten additions and changes that reflected their negotiations. The most significant change was due to the defendant's insistence that the contract be for a stated price rather than for a price per foot as is the plaintiff's usual practice. The parties executed the contract in duplicate.

The plaintiff then brought his equipment onto the defendant's land. The defendant rejected the plaintiff's recommendation for the location of the well hole, selected the drilling site himself, and prevented the plaintiff from drilling at any other location. The plaintiff drilled to a depth of 600 feet without finding water. He offered to continue digging at an additional cost of $7 per foot, but the defendant rejected that offer. The defendant did not suggest that the plaintiff continue digging at no additional cost or dig at a different location, or else forfeit all compensation. The plaintiff then removed his equipment.

When the plaintiff submitted his bill for the contract price of $2,000, the defendant refused to pay on the grounds that the plaintiff had

failed to establish a water-producing well. The defendant has not at any time claimed that the work was not performed in a workmanlike manner. The defendant subsequently engaged another well driller, who drilled a water-producing well at a different location on the defendant's property.

The uncertainty whether a well hole will produce a supply of good water, no matter how skillfully the work may be done, is a matter of common knowledge. *Atwood Vacuum Machine Co. v. Varner Well and Pump Co.*, 3 Ill. App. 2d 571, 122 N.E.2d 834 (1954); Annot., 90 A.L.R.2d 1346 (1963). Therefore "the general rule is that under a contract to sink a well, the contractor does not, in the absence of any provision to this effect, guarantee the results of the undertaking in respect of the quantity or quality of the water to be produced." *O'Haire v. Breton*, 102 N.H. 448, 452, 159 A.2d 805, 808 (1960). Any guarantee must be "by express statement or very clear implication, especially where the contractor does not choose the site." *Schofield v. School District No. 113*, 105 Kan. 343, 346, 184 P. 480, 481–82 (1919); *see O'Haire v. Breton*, 102 N.H. at 452, 159 A.2d at 808; 78 AM. JUR. 2d *Waters* § 189 (1975). The question before us is whether this contract, reasonably construed, contains an express warranty that water will be produced.

The preprinted contract form contained the following express disclaimer of guarantee:

> 7. The Contractor undertakes to perform all work under this agreement in a workmanlike manner and in accordance with standard practices for the drilling of wells in the vicinity of the Owner's premises, and to proceed to the completion of the work with reasonable diligence. It is fully understood, however, that the Contractor does not warrant or guarantee that the work will result in the establishment of a water-producing well.

The defendant claims that, notwithstanding this express disclaimer, a guarantee of water was implied by some handwritten language added during the parties' negotiations. That provision reads:

> Contractor agrees to drill well for ($2,000.00) two thousand dollars, and get the minimum flow of five gal. at 100 ft., 3 gal. at 200 ft., 1 gal. at 310 ft. 3/4 gal. at 400 ft. & 1/2 gal. at 500 ft. Maximum 600 ft.

The defendant's position, which was apparently accepted by the trial court, is that the handwritten language constitutes a guarantee that the plaintiff will establish a water-producing well and that it prevails over the express printed disclaimer. We do not think the contract, taken as a whole, supports that interpretation.

■■ It is this court's task to interpret the contract, using facts found by the trial court. *See MacLeod v. Chalet Susse Int'l, Inc.*, 119 N.H. 238, 401 A.2d 205 (1979). In our search for the interpretation that will best reflect the parties' intention, the court considers "the written agreement of these parties, all of its provisions, its subject matter, the situation of the parties at the time, and the object intended." *Griswold v. Heat Inc.*, 108 N.H. 119, 123, 229 A.2d 183, 186 (1967).

The handwritten clause states that the contractor will drill a well and obtain a specified minimum flow at designated levels. A "well" is a hole dug for the purpose of obtaining water, and does not by itself indicate a successful water-producing well. BLACK'S LAW DICTIONARY 1766 (4th ed. 1951); 78 AM. JUR. 2d *Waters* § 182 (1975); *accord, Littrell v. Wilcox*, 11 Mont. 77, 84, 27 P. 394, 396 (1891). The trial court approved the plaintiff's explanation that the list of minimum flow specifications meant that his obligation to continue drilling would cease if he obtained any one of the specified minimums at that depth. The dispute between the parties centers, therefore, on what "maximum 600 feet" means. The plaintiff contends that drilling to 600 feet was his maximum obligation, which, if completed, would entitle him to compensation even if no water was found. The defendant has argued that "[m]aximum 600 feet" meant that the plaintiff was required to drill only to 600 feet, but would not be entitled to any compensation unless water was produced; and, alternatively, that the plaintiff was obligated to drill 600 feet at that location before seeking water in other locations, and would only be paid if and when he eventually found water.

■ In choosing between alternative readings of the troublesome addendum, the fact that the plaintiff wrote both the prepared contract and the handwritten provision is not determinative. The trial court ruled correctly that "no presumptions are to be indulged in either for or against a party who draws an agreement." *Aldrich v. Charles Beauregard & Sons*, 105 N.H. 330, 336, 200 A.2d 14, 18 (1964). The plaintiff's actions are consistent with his claim that the addendum was not meant to override the express disclaimer.

■ This court must, wherever possible, adopt the interpretation of an ambiguous clause that will be in harmony with

the remainder of the document, so that all provisions will have meaning and effect. *Bellak v. Franconia College*, 118 N.H. 313, 316, 386 A.2d 1266, 1268 (1978). If the two provisions can be construed in a way that gives effect to both, it does not matter whether they are handwritten or printed. 17 AM. JUR. 2d *Contracts* § 271 (1964); 3 A. CORBIN, CONTRACTS § 548 (1960).

> [I]n construing a contract . . . we must assume that the words used were used advisedly and for the purpose of conveying some meaning. Words are only to be ignored or regarded as surplusage when to do otherwise would be either to render the document insensible or else to produce a result obviously at variance with its clear intention or purpose.

*McGinley v. John Hancock Mut. Life Ins. Co.*, 88 N.H. 108, 111, 184 A. 593, 595 (1936). Only when two provisions are "so radically repugnant that there is no way in which they can rationally stand together" will one provision be ignored or considered void. 17 AM. JUR. 2d *Contracts* § 267 (1964). Ignoring an express contract provision is in essence reforming the contract, and can be done only when the court concludes that such an interpretation reflects what the parties actually intended. *Spear v. Penna,* 92 N.H. 190, 27 A.2d 92 (1942).

 Normally a well driller is paid a set price per foot actually drilled, whether or not water is produced, so long as the drilling was authorized and was performed in a workmanlike manner. *See, e.g., Mikell v. Allen,* 117 N.II. 286, 371 A.2d 1179 (1977). The plaintiff's prepared contract put the defendant on notice that the plaintiff normally did not guarantee water. The defendant insisted on other material changes in the contract, in particular the change from a price per foot to a flat price, but allowed the express disclaimer language to stand. We cannot presume that, at the time, the defendant relied on the handwritten clause to override the express disclaimer. The defendant's overt acts indicate that he understood that the plaintiff's obligation was limited and that the plaintiff expected to be paid for the work done whether or not water was found. *See O'Donnell v. Cray,* 109 N.H. 223, 248 A.2d 83 (1968). On these facts, we cannot conclude that the parties intended the ambiguous handwritten provision to negate the express disclaimer. Interpreting the 600-foot maximum as the limit of the plaintiff's obligation in order for him to be entitled to the $2,000 contract price, rather than as a guarantee of success, gives full effect to both the handwritten provision and the express disclaimer.

Such an interpretation is reasonable given the circumstances and the parties' course of conduct. Because the contract price was fixed at $2,000, regardless of the number of feet drilled, both parties were gambling on the depth at which water might be found. Under the defendant's reading of the contract, the plaintiff in order to receive any compensation would have to go on drilling well holes indefinitely, at any locations chosen by the defendant, until he struck a sufficient quantity of water. This court will, where possible, avoid construing a contract in a manner that leads to harsh and unreasonable results or places one party at the mercy of the other. *Ass'n of Portsmouth Teachers v. Portsmouth School District*, 113 N.H. 659, 661, 312 A.2d 573, 575 (1973). Absent clear language by which a contractor expressly guarantees the success of a well, we will not subject him to the possibility of a substantial forfeiture. *Accord, Poland v. Thomaston Face & Ornamental Brick Co.*, 100 Me. 133, 60 A. 795 (1905); *Littrell v. Wilcox*, 11 Mont. 77, 27 P. 394 (1891); *cf. Perkins v. Roberge*, 69 N.H. 171, 39 A. 583 (1897) (contractor entitled to contract price when he performs in a workmanlike manner). Taken as a whole, the contract does not contain the type of clear expression of a guarantee of water that would overcome the general rule.

*Exception sustained; judgment for the plaintiff.*

All concurred.