Grafton
No. 79-058

SMITH, BATCHELDER & RUGG

v.

WILLIAM JAY FOSTER, ROBERT GENOVESE
AND CHRISTOPHER C. BARRETT

August 20, 1979

*Gardner & Clauson*, of Hanover (*K. William Clauson* orally), for the plaintiff.

*Orr & Reno*, of Concord (*Ronald L. Snow* orally), for the defendants.

DOUGLAS, J.    This is an action in equity brought by the plaintiff to enforce restrictive covenants against the defendants. After a hearing, the Master (*E. Paul Kelly*, Esq.) recommended that the covenants should be held unenforceable and that a temporary and permanent injunction should issue to prevent the plaintiff from enforcing any of the provisions of the restrictive covenants. This recommendation was upheld by the Superior Court (*Johnson*, J.), which reserved and transferred the plaintiff's exceptions. We overrule the plaintiff's exceptions.

The plaintiff is the largest accounting firm in both New Hampshire and Vermont with four offices in New Hampshire and three in Vermont. The defendants are former employees of the plaintiff. Before beginning his employment, each defendant had orally negotiated the terms of his employment with a representative of the plaintiff. After these agreements were made, each defendant signed a written contract containing a covenant not to compete with the plaintiff upon termination of the employment. These restrictive covenants were not part of the prior oral agreements but defendants were confronted with the written covenants only after they had substantially changed their positions in reliance upon the prior oral agreements.

The covenants provided that for three years after termination of employment, the employee "will not enter into the employ of, or represent in any manner, any person, firm or corporation who or which was a client of the Employers at any time prior to the termination of this employment without the express written approval of the Employer." The covenants contained a liquidated damages clause which provided that in the event of a breach of the restrictive covenant, the employees would have to pay fifty percent of the fees they received from serving the plaintiff's former clients for three years after the termination of their employment.

In August 1976, the defendants voluntarily terminated their employment with the plaintiff and established an accounting firm in White River Junction, Vermont. The defendants are presently serving

207 clients, 40 of whom are former clients of the plaintiff. The defendants did not receive the express written approval of the plaintiff required by the employment contract before they began to serve these clients.

■■ An employer seeking to enforce a covenant not to compete must show that the covenant is supported by consideration, *see Lang v. Johnson*, 24 N.H. 302 (1851), and that it is reasonable with respect to the interests of the employer, the employee, and the public. *Moore v. Dover Veterinary Hospital, Inc.*, 116 N.H. 680, 367 A.2d 1044 (1976). Even if the trial court determines that the covenant is unreasonable, the employer nonetheless may be entitled to equitable relief in the form of reformation or partial enforcement of an overly broad covenant upon a showing of his exercise of good faith in the execution of the employment contract. *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970). *See generally Insurance Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972).

We must examine the provisions of the employment contracts to determine whether the restrictive covenants were supported by consideration. The written covenant contained a clause, not contained in the original oral agreement, that employment was terminable by either party on thirty days' written notice, and terminable by the plaintiff if it was not satisfied with the employees' services. The plaintiff reserved the right to be the sole judge of such satisfaction.

■ The master incorrectly determined that the notice requirement, added by the written covenant, was not sufficient consideration for the defendants' promises not to compete upon termination of their employment. *See Advanced Copy Products, Inc. v. Cool*, 363 N.E.2d 1070 (Ind. App. 1977). The notice provision itself is not invalid for lack of consideration. A provision "that one party shall have the power to cancel by notice given for some stated period, such as 'notice for thirty days' . . . should never be rendered invalid thereby for lack of 'mutuality' or for lack of consideration." 1A A. CORBIN, CONTRACTS § 164, at 83 (1963).

■ The provision permitting the plaintiff to terminate the contract if dissatisfied with the defendants' work does not render its promise to employ illusory because there is an implicit requirement that the employer, in good faith, be dissatisfied with the employee's work when he exercises his power to terminate the employment. 3A A. CORBIN, CONTRACTS § 647, at 105 (1960).

■ The defendants signed the covenants after they were hired by the plaintiff under oral employment agreements and were employed for approximately three years after they signed their employment contracts. Continued employment after signing an employment contract constitutes consideration for a covenant not to compete contained therein. *Daughtry v. Capital Gas Co.*, 285 Ala. 89, 229 So. 2d 480 (1969); *Farm Bureau Service Co. v. Kohls*, 203 N.W.2d 209 (Iowa 1972). *Contra, Kistler v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975).

■ The trial court determined that the covenants were unenforceable because they imposed unreasonable restrictions upon the employees. The covenant's validity depends upon its reasonableness given the particular circumstances of each case. *Moore v. Dover Veterinary Hospital, Inc.*, 116 N.H. 680, 684, 367 A.2d 1044, 1047 (1976).

■ In scrutinizing restrictive covenants, this court employs the following three-pronged test: "[a] restraint on employment is reasonable only if it is no greater than necessary for the protection of the employer's legitimate interest, does not impose undue hardship on the employee and is not injurious to the public interest." *Moore v. Dover Veterinary Hospital, Inc.*, 116 N.H. at 684, 367 A.2d at 1047; Blake, *Employee Agreements Not to Compete*, 73 HARV. L. REV. 625, 648–49 (1960).

■ The master correctly concluded that the restrictive covenant was unreasonable as it related to the employer's legitimate interest. The master found that the plaintiff's earnings exceed two million dollars per year and that it serves over 3,000 clients. The master also found that the defendants serve only 207 clients and that their gross earnings for the period of June 1, 1977, to January 12, 1978, were $47,900. The master held that in the absence of a defined geographical coverage within the covenants, the two-State region of New Hampshire and Vermont would be established as the area covered. He found that this area is unreasonably large. He further found that the class of clients protected by the covenants was too broad because the class includes all clients served by the plaintiff during its existence, whether or not they were current clients.

Several courts have enforced restrictive covenants in the accounting profession to protect the employer's legitimate interest. *See Faw, Casson & Co. v. Cranston*, 375 A.2d 463 (Del. Ch. 1977); *Ebbeskotte v. Tyler*, 127 Ind. App. 433, 142 N.E.2d 905 (1957); *Scott v. Gillis*, 197 N.C. 223, 148 S.E. 315 (1929); *Racine v. Bender*, 141 Wash. 606, 252 P. 115 (1927). These courts reasoned that, due to the nature of

the accounting profession and the accountant-client relationship, the restrictive covenants should be enforced because they furthered the employer's legitimate interest "in protecting its business from former employees who have gained knowledge of its clients and internal operations and who thereafter engaged in a competing practice." *Faw, Casson & Co. v. Cranston*, 375 A.2d at 468. Nevertheless, evidence presented to the master indicates that some members of the accounting profession are not in favor of these types of restrictive covenants. Evidence in the record reveals that the American Institute of Certified Public Accountants opposes such covenants because it believes that the employee is put at a severe disadvantage.

■ Courts closely examine the effect that enforcement of a covenant will have upon the employee's life. 6A A. CORBIN, CONTRACTS § 1394, at 101 (1962). "Disproportionate hardship to the party against whom enforcement is sought has always been regarded as a reason for refusing equitable remedies." *Id.* In this case, the defendants are earning less than when they were employed by the plaintiff. Requiring the defendants to pay fifty percent of their earnings from 40 of their 207 clients undoubtedly would work hardship upon the defendants. This hardship is disproportionate to the harm that the plaintiff would incur if 40 of its 3,000 clients seek the services of the defendants. The master found that none of the defendants were actively soliciting any former client of the plaintiff. The defendants should not, therefore, be penalized for or precluded from following their chosen profession. "An employer 'has no right to unnecessarily interfere with the employee's following any trade or calling for which he is fitted and from which he may earn his livelihood and he cannot preclude him from exercising the skill and general knowledge he has acquired or increased through experience or even instructions while in the employment.' " *Dunfey Realty Co. v. Enwright*, 101 N.H. 195, 199, 138 A.2d 80, 83 (1957), *quoting Roy v. Bolduc*, 140 Me. 103, 107, 34 A.2d 479, 481 (1943).

The master also ruled that the liquidated damages figure was unreasonable because it was actually a penalty inserted to prohibit the defendants from serving any former clients of the plaintiff after termination of the employment. *See Langlois v. Maloney*, 95 N.H. 408, 64 A.2d 697 (1949). The plaintiff alleges that the liquidated damages figure represents compensation to which it is entitled in return for its expense in educating the defendants. The master found that the liquidated damages figure did not bear a reasonable relation to the injury suffered by the plaintiff; therefore, the clause is not enforceable. *Id.* at 412–13, 64 A.2d at 701.

The master finally found that the covenant was unreasonable because the public's ability to choose accountants would be adversely affected. Residents of New Hampshire and Vermont who were dissatisfied with the plaintiff's services could not freely seek out the services of the defendants without causing the defendants to incur severe financial penalties.

The master's conclusion that the restrictive covenants failed all three parts of the reasonableness test is supported by the evidence and will not be overruled. *See Sargent Lake Association v. Dane*, 118 N.H. 720, 393 A.2d 559 (1978).

The plaintiffs argue that even if the restrictive covenants are unreasonable, the trial court incorrectly refused to reform them. Courts reform overly broad restrictive covenants if the employers first show that they acted in good faith in the execution of the employment contracts. *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970). *See generally Insurance Center, Inc. v. Taylor*, 94 Idaho 896, 499 P.2d 1252 (1972); *Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 325 N.E.2d 544 (1975). The master stated that he would deny the plaintiff's request for a finding that it acted in good faith in the execution of the employment agreements. His statement was based on the fact that all three defendants had executed their employment agreements *after* they were hired and that none of the three were given any opportunity to understand the restrictive covenants in their employment agreements. The defendants, therefore, did not have the "full understanding" of the agreement that was available to the parties in *Moore v. Dover Veterinary Hospital, Inc. supra* and *Dunfey Realty Co. v. Enwright supra*. The master found that when each defendant orally negotiated the terms of his employment with a representative of the plaintiff, there was either no discussion of the employment agreement containing the restrictive covenant or just a general reference to it.

Although the master erred in stating that he had no authority to reform the overly broad restrictive covenants, *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A.2d 53 (1970), his error is harmless because the plaintiff was not prejudiced by the ruling. *Daniels v. Barker*, 89 N.H. 416, 420, 200 A.2d 410, 415 (1938). The plaintiff is not entitled to reformation because the master found that it failed to sustain its burden of proving good faith in the execution of the employment contracts.

In summary, we hold that the restrictive covenant, although supported by consideration, is unreasonable with respect to the

interests of the employer, the employee, and the public. The plaintiff is precluded from obtaining the remedy of reformation because it did not prove that it acted in good faith in the execution of the employment contracts.

*Exceptions overruled.*

All concurred.