# WILLIAM J. GOSSELIN & a.

v.

# FORTIKA B. ARCHIBALD

November 20, 1981

*Murphy & Foley P.A.*, of Plymouth (*Edwin W. Kelly* on the brief and *Walter L. Murphy* orally), for the plaintiffs.

*Nighswander, Lord, Martin & KillKelley*, of Laconia (*David J. KillKelley* on the brief and orally), for the defendant.

KING, C.J. The questions to be decided in this case are whether the trial court erred in awarding the plaintiffs compensatory damages in a breach of contract action and in enforcing and extending a covenant not to compete. We affirm in part, reverse in part, and remand.

The defendant, Fortika B. Archibald, owned real estate known as the Deep River Motor Inn in Plymouth, New Hampshire. The defendant negotiated with Richard and Carol Hogan for the purchase of the property, but, because the Hogans could not obtain financing, the sale was never consummated. The plaintiffs, William J. Gosselin and Betty E. Gosselin, had a tentative agreement with the Hogans to join efforts in managing the Deep River Motor Inn and another property, the Staffordshire Inn, which the Hogans owned. When the negotiations between the defendant and the Hogans failed, the defendant offered the property to the plaintiffs. The plaintiffs accepted and the defendant revised the documents prepared for the sale to the Hogans to name the plaintiffs as the purchasers.

On November 30, 1977, the defendant and the plaintiffs signed a purchase and sale agreement for the property. In this document, the defendant agreed that:

> "At the time of the closing, seller shall execute an agreement in form satisfactory to both parties wherein seller will covenant and agree that for a period of five (5) years after the date of closing she will not, anywhere within a radius of fifteen (15) air miles of the Deep River

Motor Inn, compete with the Buyers in the motel, restaurant or resort business either as owner of a competing business, or otherwise."

The defendant also agreed:

"[T]o convey to Buyer all rights and exclusive use of the trade name 'Deep River Motor Inn' and 'Deep River,' with the exception that the Seller may use the name 'Deep River' for her exclusive use in her real estate business, and Seller agrees to deliver to Buyer at the time of closing such documents as may be necessary to enable Buyers to register said trade name in the office of the New Hampshire Secretary of State."

Additionally, the purchase and sale agreement contained a provision stating that the seller would "rent space currently occupied by seller's real estate business . . . , such tenancy to be at will, and sixty days' written notice by either party to the other shall be required to terminate such tenancy."

The plaintiffs took possession of the premises on or about December 16, 1977, and the defendant continued to occupy the space provided for her real estate business. At the closing on December 28, 1977, the defendant executed a warranty deed for the Deep River Motor Inn to the plaintiffs. On this date the defendant also delivered to the plaintiffs an option agreement for the purchase of approximately twenty-nine acres of unimproved land, payment to be made over a three-year period. The agreement gave the plaintiffs the right to exercise the option in writing between August 1, 1978, and August 15, 1978. In a letter dated August 14, 1978, the plaintiffs exercised their option to purchase this property. The chief of police of Campton delivered the letter to the defendant's husband on the evening of August 15, 1978. Although several closings were arranged, the defendant has never executed a deed for the property to the plaintiffs.

In accordance with the purchase and sale agreement for the Deep River property, the defendant delivered a dissolution form, relinquishing her rights to the trade name Deep River Motor Inn. The dissolution was not effective, however, because the name was registered to John M. Ranney and Marjorie N. Ranney. Since that time, the plaintiffs have obtained a release from the Ranneys and the trade name is now registered in the plaintiffs' names.

The plaintiffs allege that the defendant did not deliver 144 of the 716 sheets included in the inventory of Deep River Motor Inn, and that the defendant failed to make repairs that she promised. The

defendant admits that she has not complied with these two obligations.

In February 1978, the defendant approached the plaintiffs with a plan under which they could lease another motel for sale in Plymouth, New Hampshire, originally known as Tobey's, now known as The Candlelite Traveler (Candlelite). The Candlelite is located about one-and-one-half miles from the Deep River Motor Inn. The defendant had a broker's listing for this motel, and she was interested in the property. Having made an agreement not to compete with the plaintiffs, however, she hoped to include the plaintiffs in the transaction. The plaintiffs offered to lease the Candlelite for ten years with an option to buy, but the defendant wanted a lease for only three years. Consequently, negotiations between the parties ended.

On March 13, 1978, Dr. John Archibald, the defendant's husband, signed a purchase and sale agreement to buy the Candlelite. At approximately the same time, the defendant and her husband went to see the plaintiffs and informed them of the pending sale. After this visit, relations between the parties deteriorated. Subsequently, the defendant abandoned the space she rented at the Deep River Motor Inn, having given the plaintiffs one week's notice. The defendant asserts that she was bothered by the plaintiffs' "traipsing" through her offices, but she did not complain at that time to the plaintiffs or indicate that as her reason for terminating the tenancy.

On April 25, 1978, Dr. Archibald bought the Candlelite, and by June 1978, the defendant had moved her real estate business to the Candlelite, still using the name Deep River Realty.

There is evidence in the record that the defendant participated in some aspects of the management of the Candlelite. Additionally, the defendant admits that her husband had no experience in motel or restaurant management prior to acquiring the Candlelite. Dr. Archibald had a busy medical practice and devoted little time to the operation of the Candlelite.

The plaintiffs brought an action against the defendant in Grafton County Superior Court asking for equitable and monetary relief for breaches of the parties' contracts. The Master's (*Mayland H. Morse*, Esq.) decree, approved by the Trial Court (*Johnson*, J.), awarded the plaintiffs $25,000 in compensatory damages and enjoined the defendant from participating in the management of the Candlelite and from operating her real estate business on the premises of the Candlelite.

The master determined that the defendant's failure to

transfer a valid dissolution of the trade name Deep River Motor Inn on the date of the plaintiffs' purchase did not warrant an award of damages or the granting of equitable relief. We agree. The plaintiffs did not suffer damages because, from the time they took possession of the property until the time the trade name was registered in their names, the plaintiffs had full use of the name Deep River Motor Inn. Therefore, without an award of damages, the plaintiffs are in the same position they would have been in if the defendant had fully performed on the purchase date. *See Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 447, 374 A.2d 929, 933 (1977) (quoting C. McCORMICK, LAW OF DAMAGES § 137, at 560–61 (1935)).

■■ The master ordered the defendant to convey to the plaintiffs the twenty-nine acres of unimproved land described in the option agreement. "We have held that a decree for specific relief is not a matter of right but rests in the sound discretion of the court according to the circumstances of the case." *Johnson v. Korsak, Inc.*, 120 N.H. 412, 415, 415 A.2d 1141, 1143 (1980); *Carle's Motorcycle Shop, Inc. v. Johnson*, 113 N.H. 77, 79, 301 A.2d 335, 336 (1973) (citations omitted). An equitable remedy should be imposed in situations involving real estate, absent evidence that the remedy is impossible or inequitable. *Johnson v. Korsak, Inc.*, 120 N.H. at 415, 415 A.2d at 1143. The master, therefore, did not abuse his discretion in ordering the defendant to convey the twenty-nine acres to the plaintiffs under the option agreement. *See Belrose v. Baker*, 121 N.H. 48, 51, 426 A.2d 454, 456 (1981).

■■ The master ordered that the plaintiffs' option agreement payments for the purchase of the twenty-nine acres of unimproved land be extended over a ten-year period. The master did not explain why he ordered a ten-year payment period instead of the three-year period provided in the option instrument itself. We cannot agree with the master's order. Absent an ambiguity and evidence of the parties' intent to integrate a new term into the agreement, we must effectuate the parties' intent at the time the contract was made. *See Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 235, 401 A.2d 201, 203 (1979); *Thiem v. Thomas*, 119 N.H. 598, 603, 406 A.2d 115, 118 (1979). Because the option instrument is the only evidence of the parties' intent in this case, the option agreement must be enforced as it is written, and the plaintiffs must adhere to the three-year payment period.

The master further ordered that the defendant be enjoined from operating her real estate business under the name Deep River Realty on the premises of the Candlelite. Reading the provisions of

the purchase and sale agreement together, he concluded that the parties intended that the defendant not be allowed to use the name Deep River at the site of a competing motel. We agree.

■■ The defendant concedes that she agreed to use the trade name only for her real estate business. The purchase and sale agreement, when read in its totality, indicates that the defendant violated the parties' contract by operating a real estate business at the Candlelite. *See 93 Clearing House, Inc. v. Khoury,* 120 N.H. 346, 350–51, 415 A.2d 671, 675 (1980); *Bellak v. Franconia College,* 118 N.H. 313, 316, 386 A.2d 1266, 1268 (1978). A contract must be interpreted in a way best assimilating the parties' intent. *See MacLeod v. Chalet Susse Int'l, Inc.,* 119 N.H. 238, 243, 401 A.2d 205, 208–09 (1979) (quoting *Rogers v. Cardinal Realty, Inc.,* 115 N.H. 285, 286, 339 A.2d 23, 25 (1975)) (citations omitted); *Erin Food Servs., Inc. v. 688 Props.,* 119 N.H. at 235, 401 A.2d at 203. By using the name Deep River Realty on the premises of the Candlelite, the defendant created a substantial likelihood that the public would be confused between the real estate business and the Deep River Motor Inn and between the Candlelite and the Deep River Motor Inn. *See generally, Fisher Stoves, Inc. v. All Nighter Stove Works,* 626 F.2d 193, 194 (1st Cir. 1980). Although they agreed to allow the defendant to use the name Deep River Realty, the plaintiffs did not contemplate a use that would create confusion in the minds of the public as to the distinction between their motel and the Candlelite.

Having found that the defendant had "violated the spirit and intent of a binding contractual provision not to compete," the master enjoined the defendant from participating in the management or operation of the Candlelite and from being present at the Candlelite as long as its ownership remained in her husband or other members of her family.

■ The defendant concedes the existence of an agreement not to compete. The terms of the agreement, as set forth in the purchase and sale contract, are reasonable and enforceable. *See Dunfey Realty Co., Inc. v. Enwright,* 101 N.H. 195, 197–98, 138 A.2d 80, 83 (1957). The defendant argues, however, that she has not breached the agreement not to compete. We disagree. The weight and credibility of the evidence is a matter for the trier of fact. *93 Clearing House, Inc. v. Khoury,* 120 N.H. at 350, 415 A.2d at 674. There is sufficient evidence in the record to support the master's finding that the defendant participated in some aspects of the management of the Candlelite. *See Hynes v. Whitehouse,* 120 N.H. 417, 421, 415 A.2d 876, 878 (1980).

■ The agreement not to compete states that the defendant shall not "*compete with the Buyers . . . either as owner . . . or otherwise.*" (Emphasis added.) This court interpreted similar language in *Moore v. Dover Veterinary Hospital, Inc.*, 116 N.H. 680, 367 A.2d 1044 (1976). In *Moore*, the defendant had agreed not to compete as a dentist either "directly or indirectly." *Id.* at 683, 367 A.2d at 1047. This court held that, although the agreement did not expressly prohibit the defendant from practicing dentistry under a corporate name, his attempt to do so violated the covenant not to compete. *Id.* at 686, 367 A.2d at 1049. The defendant's actions in this case likewise violated the agreement not to compete even though the defendant is not the owner of the competing business.

■■ The master ordered that the parties' five-year covenant not to compete be extended by twenty-three (23) months which represented the amount of the time between the defendant's breach of the covenant on March 13, 1978, and the master's order on February 15, 1980. We cannot agree with the master's extension of the time limitation of the covenant not to compete. Absent ambiguity as to the duration of the agreement or evidence of the parties' intent to extend the agreement, a court cannot change the express terms of a covenant. *See Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. at 235, 401 A.2d at 204; *Thiem v. Thomas*, 119 N.H. at 603, 406 A.2d at 118. Furthermore, covenants not to compete are generally narrowly construed and cannot be extended past the " 'fair and natural import of the language used.' " *Moore v. Dover Veterinary Hospital, Inc.*, 116 N.H. at 686, 367 A.2d at 1048 (quoting *Bowers v. Whittle*, 63 N.H. 147, 148 (1884)). The master had the power to award compensatory damages resulting from the defendant's twenty-three (23) month breach of the covenant not to compete, but he chose instead to reform the agreement not to compete by extending the original five-year limitation. Although we order that the extension of the covenant be vacated, we remand to the master for a redetermination of the damages, if any, for the period of the breach.

The master awarded $25,000 in compensatory damages to the plaintiffs. Because injunctive relief was ordered as a permanent remedy for the breach of the covenant not to compete, and the extension of the covenant was ordered to remedy the partial breach of the covenant not to compete from March 1978 to February 1980, the monetary award must represent the following breaches: the failure by the defendant to deliver 144 sheets; the failure by the defendant to perform certain repairs; and the failure by the defendant to give adequate notice of her termination of the

tenancy. Even viewing the award in the light most favorable to the prevailing party, *93 Clearing House, Inc. v. Khoury*, 120 N.H. at 350, 415 A.2d at 674, on the record before us we find that $25,000 is excessive unless the injunction enforcing the covenant not to compete is removed and the award of $25,000 thereby includes damages for the permanent breach of the covenant not to compete.

Additionally, any award of damages to the plaintiffs must be reduced by the amounts the plaintiffs owe the defendant. The defendant proved with sufficient specificity that the plaintiffs owe money on certain utility and fuel bills. *See Progressive Survey, Inc. v. Pearson*, 120 N.H. 58, 60, 410 A.2d 1123, 1125 (1980); *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977). If the defendant has sustained damages as a result of the plaintiffs' failure to pay these bills, the award to the plaintiffs should reflect those damages.

We remand to the trial court and order, in the alternative, either that the damages be reduced to reflect only those breaches not remedied by injunctive relief or that the damages be allowed to stand, but the injunction enforcing the covenant not to compete be removed. Under either alternative, the damages awarded to the plaintiffs may include an amount proved to represent the breach of the covenant not to compete up to this date. Also, under either alternative, the award of damages to the plaintiffs must be reduced by the amount of damages proved by the defendant.

*Affirmed in part; reversed in part; remanded.*

BATCHELDER, J., did not sit; the others concurred.