Hillsborough
No. 87-502

### Nicholas L. Shakra and Emily K. Shakra
### v.
### The Benedictine Sisters of Bedford, New Hampshire, Inc., Defendant, and Sister Elena Simonis, Intervenor

February 6, 1989

*Bossie, Kelly & Hodes P.A.*, of Manchester (*Jay L. Hodes* and *Marlene A. Lein* on the brief, and *Mr. Hodes* orally), for the plaintiffs.

*Roussos & Boeckeler*, of Manchester (*John C. Boeckeler* on the brief and orally), for Sister Elena Simonis, Intervenor.

BATCHELDER, J.   The plaintiffs in this case, Nicholas and Emily Shakra, appeal from the Superior Court's (*Goode*, J.) dismissal of their petition for specific performance of a purchase and sale

agreement made between the Shakras and The Benedictine Sisters of Bedford, New Hampshire, Inc. (the Benedictine Sisters) for the subdivision and sale to the Shakras of portions of property purported to be owned by the Benedictine Sisters. For the reasons that follow, we affirm the court's dismissal of the Shakras' petition.

On August 7, 1957, Sister Raphaela Elena Simonis, Sister Alfonsa Eidimtas, Sister M. DeLillis, James Broderick, Jr., and J. Vincent Broderick formed The Benedictine Sisters of Bedford, New Hampshire, Inc. as a voluntary non-profit corporation under RSA chapter 292. The corporation was formed to establish and maintain a Roman Catholic convent and to foster the convent's religious and charitable purposes. On August 12, 1957, the incorporators met and adopted corporate by-laws. They also elected Sr. Elena Simonis as president and permanent secretary and Sr. Alfonsa Eidimtas as treasurer.

The by-laws provided for a board of directors comprised of three to seven directors having general supervisory control and management powers over corporate property, but no authority to sell or mortgage the corporation's real estate without the consent of a majority of the members. The by-laws also provided that, upon dissolution of the corporation, all the corporate assets would be transferred to the Benedictine Sisters of Kaunas, Lithuania.

On August 20, 1957, four members of the board of directors met and authorized Sr. Simonis to transact business for the corporation and to bind the corporation by her signature. On the same day, Sr. Simonis executed a mortgage deed in her capacity as president of the Benedictine Sisters to purchase the piece of land located on Wallace Road in Bedford where the nuns have lived and operated a convent since 1957.

On April 26, 1977, the Benedictine Sisters was dissolved under RSA 292:25–29 for failure to file the 1976 decennial return and fee. As of November 10, 1987, the corporation had not been reinstated or revived.

Seven years later, in May 1984, Nicholas Shakra, a real estate broker, knocked on the convent door and spoke with Sister Elena Simonis, the convent's mother superior, regarding his interest in purchasing a portion of "her" land to build a new home for his family. No agreement was made at that time. Over the next four months, Mr. Shakra kept in contact with Sr. Simonis through conversations unrelated to his proposed land transaction and by performing favors for the sisters of the convent.

Sometime during the summer of 1984, Sr. Simonis offered to sell the Shakras a portion of the Benedictine Sisters' land upon which to build a family home. After negotiations concerning the size, location, and future use of the land, Sr. Simonis agreed to sell to the Shakras about eight and one-half acres of the total of about thirty acres owned by the Benedictine Sisters. On November 28, 1984, the plaintiffs and Sr. Simonis executed a purhase and sale agreement drafted by Sr. Simonis' attorney, James Otis, which described the parcel of land involved and outlined the terms of the agreement. Both the Shakras and Sr. Simonis, as well as the lawyer, apparently believed mistakenly that the Benedictine Sisters was still in existence as a corporate entity . Neither of the parties made any effort to verify Sr. Simonis' authority or the existence of the corporation.

The plaintiffs tendered a deposit of ten thousand dollars, twenty percent of the agreed-upon sale price of fiftythousand dollars, to Sr. Simonis and subsequently expended further monies in order to proceed with an application before the Bedford Planning Board for subdivision approval pursuant to the terms of the purchase and sale agreement. Midway through the application process, Sr. Simonis notified both the planning board and the plaintiffs that she wished to rescind the purchase and sale agreement because, she alleged, Mr. Shakra had misled her about the amount of land involved in the sale. The planning board deferred decision regarding the Shakras' subdivision application pending the resolution of any civil dispute between the parties regarding the purchase and sale agreement. Sr. Simonis refused to accept the plaintiffs' tender of the remainder of the purchase price or to execute and deliver the deed upon the Shakras' demand.

The plaintiffs brought a petition for specific performance of the purchase and sale agreement and damages against the Benedictine Sisters and also petitioned for a special *ex parte* attachment on the Benedictine Sisters' real estate located at 333 Wallace Road, Bedford, New Hampshire. A writ of attachment was served on Sr. Simonis in her capacity as mother superior of the Regina Pacis Convent of Benedictine Sisters on April 3, 1985. Sr. Simonis subsequently filed a petition to intervene as a party defendant, which the court granted. As intervenor, Sr. Simonis argued that the purchase and sale agreement could not be enforced against the Benedictine Sisters, because the Benedictine Sisters no longer existed as a corporation; that, whether or not the corporation existed, she had acted outside her authority in executing the purchase and sale agreement; and that enforcement of the

agreement would create undue hardship for the Benedictine Sisters.

In its decision the trial court noted that "the threshold question [in this case] is whether the purchase and sale agreement is valid. To form a contract it is necessary, among other things, that there be a party capable of contracting and a party capable of being contracted with." To answer these questions, the court had to determine whether the Benedictine Sisters was an entity in existence at the time the "contract" was made and, if so, whether Sr. Elena Simonis was a party capable of contracting on its behalf.

The court found that, at the time the purchase and sale agreement was executed, there was no corporate entity in existence whose president had authority to enter into a contract; that the plaintiffs failed to establish either a *de jure* or a *de facto* corporation; that there were insufficient grounds to support a claim of equitable estoppel; and that Sr. Simonis "entered into the agreement while on a frolic of her own, without the benefit of authorization or approval." The court denied the plaintiffs' request for specific performance, and this appeal ensued.

On appeal the plaintiffs argue that the Benedictine Sisters had the capacity to enter into a valid and binding purchase and sale agreement enforceable by the court, notwithstanding the loss of its corporate charter, as an unincorporated religious society or as a corporation *de facto*. The plaintiffs also argue that the doctrine of equitable estoppel should render the purchase and sale agreement enforceable, where the defendant set up its own default by drafting and signing a contract in a corporate capacity at a time when the corporation had been dissolved. The plaintiffs further urge that under the facts of this case the court should have applied its equitable powers to enforce the contract against the defendant or its successors in interest. Lastly, the plaintiffs argue that the court erred in failing to award them damages, notwithstanding its findings that the contract was not enforceable. Upon the facts presented by this case, we do not find any of the plaintiffs' arguments compelling.

■■■■ " '[A] decree granting specific relief is not a matter of right, but rests in the sound discretion of the [trial] court according to the circumstances of the case.' " *Gosselin v. Archibald*, 121 N.H. 1016, 1020, 437 A.2d 302, 306 (1981) (quoting *Johnson v. Korsak, Inc.*, 120 N.H. 412, 415, 415 A.2d 1141, 1143 (1980)). However, in land contracts, specific performance will be decreed unless there are circumstances that make it inequitable or impossible to do so. *Id.* In this case, the court properly concluded that it was impossible

to order specific performance because there was no valid contract in existence to be enforced.

We do not need to reach the question of whether or not there was an unincorporated religious society or a *de facto* corporation because, even if there was one, Sr. Simonis did not have actual or apparent authority to contract for the sale of church property. *See Daniel Webster Council v. St. James Assoc.*, 129 N.H. 681, 682–83, 533 A.2d 329, 330 (1987).

Trustees or similar officers of unincorporated religious organizations must have the consent of their organization in order to convey its property. *See* RSA 292:12, :13, and :15. The trial court found that Sr. Simonis entered into the agreement while "on a frolic of her own," without the benefit of authorization or approval. We find sufficient evidence in the record to support this finding and see no evidence that Sr. Simonis had obtained any authorization or consent for the proposed land sale from any membership group.

" 'The apparent scope of an agent's authority is that authority which a reasonably prudent man, induced by the principal's acts or conduct, and in the exercise of reasonable diligence and sound discretion, under similar circumstances with the party dealing with the agent, and with like knowledge, would naturally suppose the agent to have.' " *Record v. Wagner*, 100 N.H. 419, 421, 128 A.2d 921, 922 (1957).

The plaintiffs concede that they made no attempt to verify either the corporation's existence or Sr. Simonis' authority to sell the land. Furthermore, the plaintiffs did not employ counsel to represent them during the negotiations which led to execution of the purchase and sale agreement. In fact, when a question was raised by a member of the Bedford Planning Board as to Sr. Simonis' authority to authorize the sale of church property without the bishop's approval, one of the plaintiffs informed the board that the Benedictine Sisters were a corporation which did not need permission from the bishop to sell land and further assured the board that the Benedictine Sisters had an attorney on this transaction, and that the attorney "certainly would be aware if this were necessary." When a party, who is a real estate broker, signs a purchase and sale agreement without making any attempt to verify either the existence of the corporation with which he is contracting, or the authority of the person with whom he is dealing, and relies upon an assumption that the seller's counsel will represent his interests, he fails to exercise reasonable diligence.

Although a claim for personal liability against Sr. Simonis might possibly be made out, we doubt the technical or practical merit of such a claim in light of the fact that the defendant would be an

eighty-year-old nun who had long before taken a vow of poverty. *See* Annotation, *Personal liability of members of committee or board who make a contract in name of unincorporated religious society incapable of contracting*, 61 A.L.R. 241 (1929).

The plaintiffs' equitable estoppel argument also fails. The party asserting equitable estoppel must prove five elements:

> " '(1) a representation or a concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it to his prejudice.' "

*Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442, 388 A.2d 940, 942–43 (1978) (quoting *Monadnock School Dist. v. Fitzwilliam*, 105 N.H. 487, 491, 203 A.2d 46, 49–50 (1964)). When the record presents evidence which supports the court's findings, we will uphold its decision. *See* 118 N.H. at 443, 388 A.2d at 943. In this case there is no evidence suggesting that Sr. Simonis or the Benedictine Sisters intentionally misrepresented facts which induced the plaintiffs to proceed with the purchase and sale agreement. There is evidence in the record that Sr. Simonis did not know about the corporate dissolution. There is also evidence in the record which supports the conclusion that there was no ratification of Sr. Simonis' action in agreeing to sell the property by any membership group of sisters or other church authorities of the sort that might justify the plaintiffs' ignorance about the corporate dissolution and Sr. Simonis' lack of authority. Thus, the court's rejection of the plaintiffs' estoppel claim is supported by evidence in the record, and we uphold it.

It is true that the denial of specific performance does not necessarily prevent an award of damages, and the plaintiffs did present evidence of expenses incurred in reliance upon the purchase and sale agreement. However, we fail to see how this remedy would be available to the plaintiffs, since the agreement was signed by an unauthorized agent of a non-existent corporation. *See Ross v. Eichman*, 129 N.H. 477, 480, 529 A.2d 941, 944 (1987); *Johnson v. Korsak, Inc.*, 120 N.H. at 416, 415 A.2d at 1143–44. The record before us does not reveal the disposition of the ten thousand dollars.

*Affirmed.*

All concurred.